TERRILL *et al.*, Appellants, v. BOULWARE *et al.*, Respondents.

1. A., in the year 1784, died intestate in the state of Virginia, possessed of certain slaves, leaving a widow and two children—B., a daughter, and C., a son—him surviving; certain of the slaves were allotted to the widow as dower slaves, and remained in her possession until her death in the year 1816; B., the daughter, married and died before her mother in

the year 1812, leaving D., her husband, and several children her surviving. In 1816, after the death of the widow of A., proceedings for a partition of the dower slaves were instituted by C. against the children of B.; in this suit in partition D. appeared and acted as guardian *ad litem* for his children, and, an allotment having been made to D.'s children, he took possession of the slaves so allotted, and afterwards brought them to the state of Missouri. *Held*, 1st, that D., by acting as guardian *ad litem* for his children in the suit in partition, did not become a party to such suit in such sense that he would be concluded by the judgment rendered in behalf of his children, nor would he be estopped thereby to controvert the title of his children; 2d, that by the law of the state of Virginia said slaves, upon the death of A., in the year 1784, *descended* to and vested in his heirs—B. and C.—subject to the widow's dower; that the interest so vested in B. passed to D., her husband, and not to her children.

### *Appeal from Randolph Circuit Court.*

Francis Conner, in the year 1784, died intestate in the state of Virginia, possessed of the family of slaves in controversy in this suit. He left him surviving his widow, Sarah, and two children, Paul Conner and Lucy Conner, the mother of the plaintiffs in this suit. Lucy Conner afterwards married Flemming Terrill, under whom the defendants in the present action claim title. Said Lucy died in the year 1812, leaving her surviving her husband Flemming Terrill, and several children, a portion of whom are plaintiffs in the present action. The slaves in controversy were assigned to Sarah, the widow of Francis Conner, as her dower, and remained in her possession until her death in 1816. After her death, Paul Conner instituted a suit for a partition of these slaves against the infant children of his sister Lucy, who appeared, by their father, Flemming Terrill, as guardian *ad litem*. In this suit, an allotment of the slaves in controversy was made to the children of said Lucy; and their father, F. Terrill, took said slaves into his possession, and afterwards, upon his removal to the state of Missouri, brought them with him and continued to hold possession of them until his death in the year 1853. Wm. F. Boulware, defendant, is in possession of the slaves in controversy, as executor of the will of Flemming Terrill. The facts stated above are admitted

Terrill v. Boulware.

before this court. The plaintiffs suffered a non-suit in the court below in consequence of the giving of certain instructions to the jury. These instructions it is unnecessary to set forth.

*Young*, *Clark* and *Davis*, for appellants, cited Rev. Code of Virg. 1819, tit. Wills, Descents, Slaves, p. 355, 382, 431; Wood v. Simmons, 20 Mo. 368; 10 Mo. 372.

*Napton*, *Buckhartt*, *Prewit*, for respondents, cited Dade v. Alexander, 1 Wash. Va. 30; 2 Call. 470; Drummond v. Snead, 2 Call. 483; Bank's adm'r v. Markberry, 3 Litt. 276; Ewing's heirs v. Handley's heirs, 4 Litt. 346; 1 Tuck. Com. 331; Robinson v. Brock, 1 H. & Munf. 213; Chichester v. Vass, 1 Munf. 115; Ball v. Townson, 4 Watts & S. 559; 3 Gill & Jo. 384; Angell on Lim. 206; Foulk v. Brown, 2 Watts, 209; 8 Barr, 184.

SCOTT, Judge, delivered the opinion of the court.

By the act of 1792 all negro and mulatto slaves in all courts of judicature within the commonwealth of Virginia were held, taken and adjudged to be personal estate. Slaves being personal estate, a gift of them might be made by parol. But no question was raised in the court below whether the admissions of the testator, Terrill, were not evidence of a gift of the slaves to his children.

One point relied on was that Terrill, by acting as guardian *ad litem* for his children in the suit for partition of the slaves, in which suit the slaves in controversy were allotted to his children, is now estopped from controverting their title. If the plaintiffs had set up a gift by their parent, such conduct would have been strong evidence in support of such a claim. If Terrill had been a party to the proceeding and the judgment in partition had not been appealed from, he would have been concluded, however erroneous it might have been, for the matter would have passed *in rem judicatum*. But we know of no rule which makes an attorney or guardian *ad litem* to a suit a party in such sense as would render the judgment conclusive

upon him. In matters where admissions may affect the rights of the party, such conduct would be evidence against the party; but we do not see on what principle he would be estopped from afterwards asserting his rights. If the plaintiffs would make this an estoppel *in pais*, we do not see that any of the elements of such a pretension exist in the case. An estoppel *in pais* arises where a party, by his conduct or admissions, induces others to act upon the faith of them; and where, if he were afterwards permitted to prove such admissions or conduct were false, such presumption would operate as an injury to the persons who were misled by them. In the present case, there is no pretence that Terrill by his conduct has induced any action of others whereby they would be injured if he were allowed to prove that the inference deduced from his conduct was false. The case falls within the principle, that the admissions of a party under a misapprehension of his legal rights do not affect him.

The main point relied on by the plaintiffs is, that—as at the death of Francis Conner, the grandfather of the plaintiff, in 1784, slaves in Virginia were personal estate not descending like real estate—the title to and right to the possession of the dower slaves became vested in the administrator, who assigned them as dower to the widow, upon whose death they reverted to the administrator, who then distributed them according to the law then in force regulating the descent of real estate; that reversions and remainders in slaves might be created by the act of the parties—but not by operation of law, which held the title and possession together; that therefore, in 1816, when the widow of Francis Conner died, the title to the dower slaves reverted to the administrator, who would then distribute them according to the law then in force regulating the descent of real estate; and that Mrs. Terrill, the daughter, having died before her mother, the tenant in dower of the slaves, the title and interest which would have vested in her, had she survived her mother, would, by law, be distributed among her children. We have said that slaves were made personal estate in Virginia by an act passed in 1792.

Before that time, in the sale or transfer of them by deed or will, they passed as chattels, and were considered as real estate in the case of descents. (Lee v. Cook, 1 Wash. 306 ; Walden's Exec'r v. Payne, 2 Wash. 1.) The 48th section of the " Act reducing into one the several acts concerning slaves" (Rev. Code, 1819) provides that, if any person possessed of a life estate in any slave shall remove or voluntarily permit to be removed out of this commonwealth such slave, without the consent of him in reversion or remainder, such person shall forfeit every such slave so removed and the full value thereof unto the person that shall have the reversion or remainder thereof.

On this section the reviser remarks : " The former laws provided for the cases of reversions against widows holding dower slaves. These sections, as amended at the late revisal, apply to all persons holding a life estate in slaves, and secure the rights of remaindermen as well as reversioners ; the former law declared a forfeiture of the whole dower interest." The 50th section of the same act uses the words " *when one or more slaves shall descend*," &c. This provision was enacted in 1790, a period after the death of Conner. These references abundantly show that in Virginia, in 1784, slaves did descend like real estate, and that by operation of law a reversionary interest was created in them. Conner dying in 1784 and his slaves descending like real estate, the title to them passed to his children, subject to the widow's dower. That such was the law of Virginia is clear from the case of Park's Adm'r v. Rucker (5 Leigh, 149). In that case, as in this, the intestate died prior to the act of 1792, which made slaves personal estate. The doweress to whom the slaves were assigned died in 1820. The court remarked, " this is the case of the heirs at law claiming the dower slaves after the death of the doweress ; and this is a clear legal claim ; for, after the assignment of dower, the administrator had nothing to do with the dower slaves. The widow had a life estate in them ; they never afterwards devolved to the administrator or formed any part of the assets." In a note to this case by the reporter, who was renowned for his

knowledge of the laws of Virginia, it is said that the intestate died before the statute of 1792 was passed making slaves thenceforth personal estate. Prior to that statute, slaves were real estate (though subject to some very peculiar regulations) and the widow was entitled to dower of them; the reversion, of course, belonged to the heirs at law. (See act of October, 1705.)

It is clear, then, that Mrs. Terrill, being an heir at law of Francis Conner, who died in 1784, had a reversionary interest in the dower slaves at the time of her marriage, and she dying before her husband and before her reversionary interest had vested in the actual possession, the doweress being still alive, the only remaining question to be determined is, whether, under such circumstances, her interest in the slaves belonged to her husband, or whether it became the property of her heirs at law, some of whom are plaintiffs in this suit.

It is to be observed that, from the view we have taken of this case, it is to be determined exclusively by the laws of the state of Virginia. The parties were all citizens of that state when the facts transpired on which the determination of the controversy depends, and of course their rights must be ascertained and determined according to the laws of the place where the transactions occurred. Had the state of facts presented in this case arisen in Missouri our determination would have been different. In 1791, in the case of Dade v. Alexander, (1 Wash. 30,) it was declared that a *feme sole* being entitled to slaves in remainder or reversion, and afterwards marrying and dying before the determination of the particular estate, the right vests in the husband. The president stated that this was the constant decision of the old general court from the year 1653 to the revolution, and has since been confirmed in this court, in the cases of Snead v. Drummond, and Herd v. Upshaw; that it had become a fixed and settled rule of property. Judge Tucker, who wrote long subsequently to this transaction, says that such was the settled law of Virginia at that day. (1 Tuck. Com. 331.)

From the view we have taken of this case, it will be seen that it does not become necessary to express any opinion in the various questions which arose on the trial respecting the statute of limitations. Judgment affirmed; Judge Ryland concurring; Judge Leonard not sitting.