PIERRE CHOUTEAU, Jr., JAMES HARRISON, FELIX VALLÉ, AND JULES VALLÉ, Respondents, v. ARCHIBALD C. GODDIN AND JOSEPH L. STEPHENS, Appellants

1. *Contract—Evidence—Sale.*—The printed conditions under which a sale by auction proceeds cannot be varied or contradicted by parol evidence of the verbal statements of the auctioneer made at the time of sale, except for the purpose of showing fraud; but parol evidence not inconsistent with the terms of sale and explanatory of them is admissible. The wrecks of steamboats, lying in the Mississippi river, were sold by name as lying at certain localities; the names of the boats as applied to the localities were reversed. *Held,* that evidence was admissible to show that the materials were lying in the river at the localities named, and that the names were wrongly given.

2. *Estoppel in pais—Evidence.*—Where a party by his acts or words induces another to believe in the existence of a certain state of things, and to act upon that belief so as to alter his previous condition, he will be estopped from averring to the contrary against the party so altering his condition. The action of a partner or part owner, acting as agent for all the owners, will conclude the other partners or part owners.

*Appeal from St. Louis Court of Common Pleas.*

This was an action brought to October term, 1863, for damages for the alleged wrongful taking and carrying away

of certain property of plaintiffs. The petition alleged a purchase by plaintiffs, as partners under the firm name of Chouteau, Harrison & Vallé, in October, 1862, at a public sale of property of the United States, a certain damaged and sunken steamboat, with her tackle and apparel, lying on the Tennessee shore of the Mississippi river opposite "Island No. Ten"; and that after said purchase defendants took possession of said boat on or about the 13th October, 1862, and wrecked said boat and took out of her the boilers, engines, machinery, &c., which they allege to be worth $7,500.

The answer denied that plaintiffs were the purchasers of the steamer described in the petition, but averred that defendants were the purchasers of said property at a sale made by one Geo. D. Wise, captain and quartermaster of the United States, upon a printed advertisement and which was read at said sale.

Defendants further alleged that the boat mentioned in the petition, though not named therein, was named in said notice of sale, and was the *Grampus;* and by that name was known, described and sold at such sale, and by that name was bought by defendant Stephens. At that sale defendant Goddin bought the *Yazoo,* and after said sale acquired a joint interest with said Stephens in the *Grampus,* and said Stephens acquired a joint interest with Goddin in the *Yazoo;* that at said sale plaintiffs bought the *Mohawk* and three other boats named in said notice of sale, but did not buy the *Grampus;* the boats were all sold as they then lay. That about the 9th of October defendant Goddin went down with hands to take possession of the *Yazoo* and *Grampus* and wreck them, and plaintiffs also sent down at the same time hands, under the direction of one Carlin, to wreck the boats bought by them. There was then some doubt whether the boat in controversy was in fact the *Grampus* or the *Mohawk,* all parties being then in doubt where the *Grampus* actually lay ; but it was soon made to appear by statements of residents cognizant of the facts, that the boat in controversy was the *Grampus,* and that the *Mohawk* lay about six miles be-

low. That both of said boats had been so injured and defaced by the action of the water while the river was high that their names were not apparent, and it was only by the statements of those who knew the boats before they were damaged that their identity could be determined. That when plaintiffs by their agents commenced wrecking said *Grampus*, defendants notified them to desist. That afterwards, about 20th October, said property being in the actual possession of no one at the time, defendants rightfully took and carried the same away as their own lawful property, without any unlawful force or violence, and converted same to their own use ; denied that the property was in plaintiffs' possession at the time it was taken, or that it was previously ever in the lawful possession of plaintiff; denied that said boat was sold and bought by the description of any precise locality, but said that the same was sold and bought by name as the steamer *Grampus*.

Wise, assistant quartermaster U. S. A., testified to the effect that a number of boats, including the *Grampus*, had been used by the rebels in the late war, and were wrecked by them in the vicinity of Island No. 10 and abandoned; they were afterwards taken possession of by witness and sold at public auction ; says he took them as prizes of war ; sold them under approval of his commanding officer at Cairo, Ills., about 3d October, 1862 ; public notice of sale given by advertisement in St. Louis, Cairo, and Cincinnati newspapers.; that advertisement is as follows :

" Sale of steamers.—I shall offer at public sale on the 3d day of October next, at Cairo, Ills., the following wrecked steamboats captured from the rebels and now lying near Island No. 10 and New Madrid : *Prince*, *Yazoo*, *John Simonds*, *Grampus*, *Mohawk*, and *Winchester*. They will be sold as they lie, and payment to be made within ten days after the sale, in Treasury notes. Cairo, Ills., Sept. 25, 1862. —Geo. D. Wise, Capt. & Ass't Q. M."

The witness further stated that plaintiffs bought at that sale the *Manchester*, *Mohawk*, *John Simonds*, and *Prince*. He (witness) gave plaintiffs—or rather Chouteau, Harrison

& Vallé—a bill of sale of the boats bought by them, of which the following is a copy :

"Cairo, Ills., October 3d.—I hereby certify that I have sold to Chouteau, Harrison & Vallé, through their agent J. D. Carlin, acting under orders from M. C. Meigs, Q. M. Gen. U. S. A., and acting under Rear Admiral Chas. H. Davis, commanding Mississippi flotilla, the following named boats at public auction : Steamer *Manchester*, $130 ; steamer *Mohawk*, $475 ; steamer *John Simonds*, $1,000 ; steamer *Prince*, $935=$2,540.—G. D. Wise, Capt. & Ass't Q. M."

"J. L. Stephens bought the *Grampus* at said sale. I executed a bill of sale to him for the same, which is hereto attached and marked

"'(Exhibit A.)—Office of U. S. Gunboat Flotilla, Cairo, Ills., October 3, 1862.—I hereby certify that I have sold to J. L. Stephens, acting under orders from M. C. Meigs, Q. M. Gen. U. S. A., and Act'g Rear Admiral C. H. Davis, comd'g Mississippi flotilla, the following named steamboat at public auction : Steamer *Grampus*.—G. D. Wise, Capt. & Ass't Q. M.''

"The boats were sold on the terms and conditions as mentioned in the advertisement, and I referred frequently to the report of Capt. Bissell, which I had in my hands at the time of sale. Mr. Stephens paid for the boat on the same day and place of sale. J. D. Carlin represented Chouteau, Harrison & Vallé at that date ; the paper hereinbefore copied as given to Chouteau, Harrison & Vallé was given to Carlin at Cairo on the day of sale ; the matter was not settled until afterwards, on the 27th day of December, 1862 ; the matter was fully settled with Chouteau, Harrison & Vallé. In making the sale I acted under the usual authority, and proceeded in the usual method of disposing of such property. I am under the order of the War Department."

On cross-examination witness further stated, in substance, that he never saw any of these wrecks, except such a view as he could have on passing down the river ; saw no names ; only knew of the names from rumor. Witness being shown

paper marked "189," in his book of registered letters, said, "it is an unofficial report of Capt. Bissell, of the engineers, to me, giving results of an examination of certain wrecked rebel boats captured by the gunboat flotilla, with a view to enable me to make the best disposition of the property for the interest of the Government. He examined wrecks and made report at my instance. This paper is the original report made by Bissell and handed to me; it is in my custody." Witness refused to give the original, but gave a sworn copy, which was objected to by defendants' counsel as irrelevant and incompetent. The paper is as follows:

"Steamer *Winchester*, tackel and apparel, lies on bar Missouri shore opposite No. 10, value $——. Steamer *Mohawk*, tackel and apparel, on Tennessee shore opposite Island No. 10; machinery and boilers, new and strong, entirely over (*sic*) water; value $2,000. Steamer *John Simonds*, tackle and apparel; machinery and boilers large and nearly new, very good, wrecked and in a barge alongside; in river near Island No. 10, value 7 to $8,000. Steamer *Yazoo*, tackle and apparel; new boat, new boilers and machinery; she lies on her side, but straight, and can be easily saved entire; on bar No. 10; value $5,000. Steamer *Grampus* (mate of *Mohawk*), nearly under water, below Island No. 10, value $1,000. Steamer *Prince*, tackle and apparel; lies on bar opposite New Madrid, high and dry; value $2,000; considerable ammunition on her, but dangerous and hardly worth saving. Estimated amount of projectiles at New Madrid and No. 10, two thousand tons; part left at each place—part (1,000 tons) taken to Memphis, 200 tons to Columbus;—they have been so mixed up that I cannot distinguish or specify amount from either place. (Signed,) J. W. Bissell."

The witness further stated that this was the paper he said he held in his hand when sale was made and boats were being cried off; also, that he gave to Chouteau, Harrison & Vallé a bill of sale, a copy of which is annexed to deposition. Defendants' counsel objected to question asking for the paper and to the introduction of a copy.

"Received, St. Louis, Mo., December 27, 1862, of Chouteau, Harrison & Vallé, of St. Louis, Mo., twenty-five hundred and forty dollars, being payment in full for the following wrecks of steamers purchased at public sale at Cairo, Ills., October 3, 1862, viz.: Steamer *Winchester*, tackle and apparel; lies on bar on Missouri shore opposite Island No. 10 —$130. Steamer *Mohawk*, tackle and apparel, on Tennessee shore opposite Island No. 10; machinery and boilers new and strong, entirely out of water—$475. Steamer *John Simonds*, tackle and apparel; machinery and boilers large and nearly new, very good, wrecked and on a barge alongside; in river near Island No. 10—$1,000. Steamer *Prince*, tackle and apparel; lies on bar opposite to New Madrid, high and dry; considerable ammunition on her, but damaged badly and hardly worth saving—$935=$2,540.— Geo. D. Wise, Capt. & Ass't Q. M."

He said the foregoing was a correct copy. Witness stated, in answer to question which was objected to, that no question arose at time of sale as to the name of the boat secondly described in Bissell's report and in bill of sale to Chouteau, Harrison & Vallé. In answer to question whether the description of the localities of these boats as contained in Bissell's report were read at the sale before the boats were cried off, witness said he read everything from Bissell's report that he thought advisable at the sale, and among the things read was the description of the localities where the respective boats were lying. In answer to question, "Were these boats not sold by the names and description as to locality and condition given them by Capt. Bissell in said report?" he said they were.

On his re-examination, witness said: "I gave to agent of plaintiffs permission to copy Bissell's report on same day of sale, and after the sale I allowed no other copy to be made, and did not allow any of the bidders or other persons to see Bissell's report before or during the sale; do not think defendants or Carlin knew I had it at the time of sale. Carlin requested a copy of it. About 24th or 25th October, 1862,

first heard of a controversy respecting the *Grampus;* this was after I had delivered the papers referred to in my direct examination and before the delivery of those mentioned in my cross-examination; and I directed my clerk, in making out of bill of sale referred to in my cross-examination, to copy the description in Bissell's report." Witness gave no reason why he did not embody description in Bissell's report in first bill of sale given to plaintiff, or in that to Stephens, except he supposed the parties knew more about the boats than he did, and did not anticipate any difficulty; he was applied to by both parties to interfere, but declined to do so; this was about 1st November. He told clerk to make out bill to Chouteau, Harrison & Vallé, and referred him to Bissell's report.

Defendants objected to the reading of part of the deposition of Wise, because the same was incompetent as contradicting, adding to, and varying from the printed advertisement and bills of sale read in evidence to Jas. L. Stephens, and that from Wise to plaintiff of October 3, 1862. The objection was overruled and said evidence permitted to be read, to which ruling defendants excepted.

Plaintiffs next read the deposition of Silvers, an auctioneer at Cairo, who sold the boats for Capt. Wise; he said the terms were cash, and they were sold from a descriptive list from a survey by Col. Bissell. The witness then testified as to the location and description of said steamers : "The first boat offered was the *Winchester*, but no bidders; the second, *Mohawk*, on Tennessee shore opposite Island No. 10, machinery and boilers clear out of water, valued at $2,000, bought by Carlin (agent) for $475.

On cross-examination he stated, in substance, that at time of sale he had nothing but the description made by Bissell; the original of that paper was given him to sell by, and by which he did sell. The description from that paper by which the *Grampus* was sold is as follows: "Steamer *Grampus* (mate to *Mohawk*), nearly under water, below Island .

No. 10, value $1,000. J. L. Stephens became the purchaser of the *Grampus* at $50."

Defendants objected to part of said deposition of Silvers as adding to or varying from the printed advertisement of the sale, also of the bill of sale executed by said Wise to the purchaser, viz.: the statement as to the terms of the sale being cash, and that said boats were sold by a descriptive list from the survey of Bissell.

James D. Carlin, a witness for plaintiffs, testified in substance, that "in September, 1862, was sent by plaintiffs to attend sale of wrecks. I first examined wrecks; was at sale. Wise showed to the persons present the order of sale and advertisement, and read off the names of the different boats. The persons on shore said that the boat lying on the Tennessee shore was the *Grampus*. Goddin and Stephens heard this statement." This last evidence objected to by defendants as hearsay; and contradicted, &c., by the advertisement and bills of sale to Stephens and to plaintiffs of October 3, 1862. Objections overruled and exceptions saved. Witness and Goddin bid on the *Grampus*, and witness bought it at $475. "I saw the *Mohawk* lying high and dry, in good order. I could not wreck the one below the island first, called the *Grampus*. I bought according to said description, and not by the name. I did not bid on the *Mohawk*." This evidence objected to by the defendants for the reasons before stated, and because witness stated conclusions of law. Overruled, and defendants excepted. "Goddin and I went together from Cairo. The first boat we came to was the one I bought. Goddin said, 'There is one of your boats.'"— Defendants objected to statement because it contradicts and varies the printed advertisement and bill of sale aforesaid, and because, even if admissible as to Goddin, was inadmissible as to Stephens, and could not affect his right or title to the property in controversy, or to make him liable to a supposed trespass thereto. Objection overruled, and defendants excepted. "The boat I bought and that Goddin bought were

about six miles apart; my boat was high and dry; did not wreck any boat except the one I bought." Defendants objected for the reasons above stated. Overruled. "After I worked one day, Goddin notified me not to work any more; that he had bought her. After I placed stuff on the bank, defendants took it away."

On cross-examination testified as to value, and also that he saw advertisement in paper before he went down. "I saw after I got there (getting it from Wise) a list of boats and appraised value."

James Collins, next witness for plaintiffs, testified as to value of machinery, &c.; Dowdall also testified as to same thing, as also Kilpatrick and N. L. Milburn, the latter of whom assisted in wrecking the boats, and stated, that, "as we were going down, Goddin said, 'There is one of your boats,' pointing to the wreck in controversy." This statement as to Goddin objected to, for the reasons last above stated. Objection overruled, and defendants excepted.

Walsh testified in substance the same as last witness, and also as to statement of Goddin; and objected to for same reasons, which were overruled and excepted to.

Plaintiffs then read bill of sale of December 29, 1862, from Wise to plaintiffs, heretofore mentioned. Objected to by defendants because it contradicted, varied, and added to adververtisement, and bills of sale to Stephens and to plaintiffs of October 3, 1862; and because said bill of sale was executed long after the sale and delivery of the boats to plaintiffs and defendants, and after a controversy had arisen respecting the property in suit. Objection overruled, and excepted to.

Defendants' testimony:

Hawkins, living at Fulton, Ky., testified that he knew the *Grampus*; saw her frequently both before and after the rebels occupied Island No. 10; was used by the rebels as a picket boat; saw her two or three days before the capture of the island; saw after she was sunk, between 15th and 25th April, 1862; sunk at Tennessee shore opposite Island No.

16—VOL. XXXIX.

10, at the upper part of a cane-brake; identified her by see-ing her name on pilot-house, color, and general appearance; she lay as indicated by the accompanying diagram. Knew the *Mohawk*—knew her by seeing her name and by her gen-eral appearance; she differed from the *Mohawk* in color, in name, and in the bow or guards. Color of *Grampus* was like Mississippi river water; her lettering was rather red-clouded, and the bow sharp, or guard tapered toward the bow nearly to a point. *Mohawk* had black letters, and the appearance of a bluff or square bow. Capt. Miller command-ed *Grampus* shortly before she sank; saw *Grampus* in a sunken condition in April, 1862.

W. E. Jones, resides at same place. "I knew *Grampus* well; was employed on her as a carpenter; I saw her in a sunken condition, a little above middle of Island No. 10, at upper part of cane-brake, in April, 1862, and identified her in same way as Hawkins, as also the *Mohawk;* saw *Mohawk* about three miles above Island 10, sunk on Saranack bar, the *Grampus* and *Mohawk* (when I saw them) sunk about seven miles distant; when I last saw *Mohawk*, in October last, she lay dry upon a bar." On cross-examination, he did did not know whether there was pilot-house, name, or cabin —none that he saw.

Owen H. Edwards, farmer, lives in Obion county, Tenn. Gave same description and means of identity and location as given by the other two witnesses last examined; saw her in a sunken condition; saw Capt. Goddin take machinery on board of *Adelia*, and no one was in charge of the machinery at that time. Knew the *Mohawk;* she differed from *Gram-pus* as stated by the other witnesses; could see the wreck of the *Simonds* from the wreck of the *Grampus*.

Vancourt, of St. Louis, testified as to value, &c., and said nobody was there when Goddin took possession; heard God-din tell Carlin not to wreck the boat—that he claimed the wreck; this was a week or ten days before Goddin took the property off; this conversation took place on board the steam-er *Adelia*, about a mile and a half below the wreck; Goddin

was in charge of the *Adelia;* Carlin and some of his hands were boarding on the *Adelia* at the time.

Jones testified as to value, &c.; was present when boat was wrecked.

Plaintiffs asked the following instructions :

1. If the court find that the particular boat mentioned and described in the petition was captured by the United States from the rebels, and was sold by the United States Government, acting through its authorized officers to plaintiffs, and that at the time of said sale the officers acting for the United States did not certainly know the name by which said boat was known and called, but sold said boat by a description of its locality and condition, then the title of the United States in ·said boat passed to the plaintiffs even though the court may believe that said boat was erroneously called the *Mohawk* during the progress of said sale.

2. If the jury find that the particular boat described in the petition was captured by the United States from the rebels, and while lying in a sunken condition, as described in the petition, was sold by the United States to the plaintiffs, and that plaintiffs took the engines, machinery, tackle and iron out of said boat and placed the same on the Tennessee shore of the Mississippi river, and that defendants without the authority or consent of plaintiffs took possession of said property when it was placed as aforesaid and converted the same to their own use, then plaintiffs are entitled to recover although the jury may believe that there was a mistake in the name of said boat, and that it was in fact the wreck of a boat called the *Grampus*, and not the wreck of a boat called the *Mohawk*.

3. If the jury find for plaintiffs, they will assess the damages at the value of the property taken by the defendants at the time and place it was taken by them, and the jury may, if they think fit, give damages in the nature of interest over and above the value of the property at the time defendants may have converted the same to their own use.

To all which defendants objected. Objections overruled, and defendants excepted.

Defendants prayed the following :

1. If the jury believe from the evidence that the property in controversy in this suit was at the time of the sale hereinafter mentioned a part of the wreck of the steamer *Grampus*, and that said wreck was advertised for sale in the manner testified to by Capt. Wise in his deposition, and sold by him at auction at the time and place and upon the terms and conditions mentioned in said advertisement, and that at said sale the wreck of the said *Grampus* was bid off and purchased by defendant Stephens, and that he then and there paid to said Wise the price therefor, and that said Wise then and there executed and delivered to said Stephens the bill of sale from said Wise to Stephens for said wreck, read in evidence by defendants, then by these acts the sale of said wreck from said Wise, as agent of the Government, to said Stephens was complete as far as said Wise was required to complete the same, and no actual personal delivery to said Stephens was necessary in order to give him a right to the possession thereof.

2. If, at the time and place of the auction sale referred to in instruction No. 1 for defendant, the wreck of the steamer *Grampus* was sold by name and bought by defendant Stephens, and the wreck of the steamer *Mohawk* was sold by name and bought by plaintiffs, and there was then or afterwards doubt or uncertainty in the minds of plaintiffs, or in the mind of said Wise, or in the minds of defendants, where said wrecks, or either of them, lay ; or if there was any mistake in the mind of either or any of said parties on that subject, such doubt, or uncertainty, or mistake, cannot affect the right of the defendants in this suit ; and if the sales were so made, a misdescription in the locality of either of said wrecks made by any of the parties cannot affect defendants' title in this suit.

3. If the court believe from the evidence that certain

wrecked steamboats were advertised to be sold at public sale by Geo. D. Wise, as agent for the Government of the United States, by advertisement printed and published prior to the day of sale, and that said wrecks were advertised in said advertisement to be sold by name as they then lay, and that the wreck of the *Grampus* was thus advertised and was purchased by the defendant Stephens at said sale, and a written bill of sale made thereof made to him at the said time by said Wise, then the said Stephens acquired title to the said wreck of the *Grampus* and the right to the possession of the same, and no declaration made by the auctioneer, or Wise, or other parties, at the time of said sale or afterwards, can impair or destroy the right of said Stephens; and if the court finds the facts as above, then the verdict must be for the defendants if they further find that the property in controversy is the wreck of the *Grampus*, if defendants acquired peaceable possession of said property.

4. If at the time of the sale of the steamboat wrecks, described in the advertisement testified to by Capt. Wise, there was misapprehension or mistake in the minds of any of the parties, and if the plaintiffs purchased the wreck of the *Mohawk* by name, supposing it to be where the *Grampus* lay, such misapprehension or mistake, under the pleadings and facts given in evidence in this case, cannot deprive the defendants of their right to be regarded in law as the owner of the wreck of the *Grampus*; and, if they were such owners, the fact of plaintiffs first taking actual possession of said wrecks could not deprive defendants of their right to the possession thereof, and in such case their subsequently taking possession, if done in the absence of plaintiffs and their agents and without personal violence, must be regarded as lawful.

5. The bill of sale read in evidence purports that Geo. D. Wise, on 3d day of October, 1862, sold to Jas. L. Stephens, one of the defendants, the steamer *Grampus;* and if the court, sitting as a jury, believe from the evidence that there was no other boat or steamer sold by said Wise at said sale

answering to the name or description given in said bill of sale, and that the boat in controversy in this suit is the *Grampus*,—then the verdict must be for the defendants, if the court is further satisfied from the evidence that the same, or the wreck of said boat, was taken possession of by defendants peaceably.

6. The bill of sale read in evidence from Wise to Stephens purports to convey absolutely to said Stephens the property therein named and described, and if the evidence shows there was but one boat or steamer sold by said Wise at the auction sale on the 3d of October, 1862, answering to such name and description, then the law presumes that the property described in said instrument was that the vendor Wise intended to sell and convey thereby to said Stephens, and parol evidence is inadmissible to show a different intention.

7. If the court, sitting as a jury, believe from the evidence that George D. Wise executed and delivered the bill of sale read in evidence to defendant Stephens, the same is to be taken as the true contract of the parties thereto, and the intention of said Wise as to what property he sold to said Stephens must be determined by the instrument itself.

All these instructions were refused, and defendants excepted.

The court, on its own motion, declared the law as follows:

1. The defendants' instructions are refused, and the court declares as matter of law that in ascertaining what boats or wrecks were sold to plaintiffs and defendant Stephens respectively, the names under which they were sold do not necessarily control the other terms of description under which they were sold, if there was any such sale; but such other terms of description may be used in connection with the names to identify the boats or wrecks sold, and, if the facts warrant it, may contradict the names under which they were sold.

2. If the wreck of the boat sued for was sold to plaintiffs as it lay, and they took possession, no written bill of sale or

transfer was necessary to vest the title in them as against the defendants; and if the bill of sale was delivered to them with an erroneous description of the property sold, that would not vitiate a title otherwise good.

These instructions were objected to by defendants; objections overruled, and defendants excepted.

The court, sitting as a jury, found for plaintiffs, and assessed their damages at twenty-five hundred and forty dollars.

*Grover & Sharp*, and *Ewing & Meier*, for appellants.

I. The court erred in admitting Bissell's so-called report; the second bill of sale or receipt to plaintiffs, dated December 27, 1862 (two months after the sale and delivery of possession), and all the evidence of Wise embraced in his cross-examination: it was all manifestly incompetent. The sale of the boats was advertised by Wise in the newspapers, in which they were described and distinguished by name, with the addition that they were lying near Island No. 10 and New Madrid, and that they would be sold " as they lie."

The property and possession passed by the bills of sale of October 3d; the delivery was according to the subject matter, and the property was placed under the control of the vendee by the bill of sale. The boats, from their situation and the nature of such property, being incapable of any other delivery, the bills of sale were sufficient to transfer the property and possession. The vendor Wise, after this, retained no right in that character over the property, and this is the true criterion whether there has been a delivery or a sale—2 Kent, t. p. 659; Gibson v. Sterns, 8 How. 384; 2 H. Black, 316. It is clear that both the vendor and vendees understood that the property, possession and full control passed to the latter upon the execution and delivery of the first bills of sale, for both plaintiffs and defendants commenced wrecking and raising the steamers in October, and the second bill of sale to plaintiffs read in evidence was not executed until 27th December; and this last was evidently not con-

sidered necessary to pass the title or possession of the boat sold.

A contract once reduced to writing, whether such as is required by the statute of frauds or not, cannot be altered by extrinsic evidence, even though it is agreed before the bargain is reduced to writing that a term or stipulation should be included—Chitty on Cont. 110; Eden v. Blake, 13 M. & W. 604, 617; Gross v. Norgent, 5 B. & Ad. 58, 65; 2 Phil. Ev. 665, and n. 494.

The purpose of the evidence objected to and improperly admitted was to show that the property clearly contained in the description of the property sold and conveyed was not intended to be sold and conveyed. It is not a case of latent ambiguity; the sale was of the steamers by name, by which they were well known. In applying this description or designation, none other appeared or was claimed by defendants except comprehended in the description. There may have been a difference of opinion or mistake as to the precise locality of the thing sold, but such mistake cannot be corrected by parol evidence—Ridgeway v. Bowman, 7 Cush. 271, strongly in point.

Though parol evidence is admitted as between conflicting claims of several persons to whom respectively part only of the description applies, yet clearly it cannot be received to support the claim of such person in opposition to that of another exactly or more nearly answering to all the particulars in the description.

The principle that when there is no ambiguity in the terms used, the agreement or instrument itself shall be the only criterion of the intention of the parties, excludes parol evidence contradictory to the writing itself, although such oral testimony would really show that the real intention of the parties was at variance with the particular expressions of the written agreement—Countess of Rutland's case, 5 Coke. 26; Chitty on Cont. 29; Delamar v. Robells, 1 Ves., Jr. (Sumner's ed.) 412; Tucker v. Seamen's Aid Soc., 7 Metc. 188; Andrews v. Dobson, 1 Cox, 425; 1 Jarm. Wills, t. p. 360-9

If there had been no boat named or called the *Grampus* or *Mohawk* near Island No. 10 or New Madrid, parol evidence might have been competent to show that a boat of some other name at that place sold by the party, and answering the description in other respects, was intended to be conveyed by the bill of sale—Dodge v. Patten, 18 Barb. 194. Parol evidence is admissible, of course, in order to ascertain what is comprehended in the terms of a given description referring to an extrinsic fact; and where evidence *dehors* the instrument raises an ambiguity by disclosing the existence of more than one subject or object to which the words are equally applicable, such evidence may close up the ambiguity which it has created by pointing out, if it can, the actual subject or object among the several properties or persons answering to the description—1 Jarm. Wills, t. p. 361.

The parol evidence offered by plaintiffs was to introduce into the instrument an intention not apparent upon its face; it was to make the bill of sale speak upon a matter on which it is altogether silent—2 Phil. Ev. 763-5.

Evidence of verbal declarations of the auctioneer varying the statements contained in the advertisement were inadmissible—Shelton v. Livin, 2 Cromp & J. 411; Gumnes v. Erhart, 1 H. Bl. 289; 13 Mees. & W. 614; Bradshaw v. Bennett, 5 Car. & P. 50; Sto. on Sales (3 Perkins' ed.), § 463.

No declarations of the vendor after the sale, nor any acts of his after that time, can affect the title of defendant—Kean v. Newell, 2 Mo. 9.

II. The doctrine of estoppel has no application whatever to the case at bar, and so the court below regarded it. The declaration of law given by the court proceeds upon a totally different theory of the case. The pretended estoppel is based upon a single remark of Goddin, one of defendants and a purchaser of an interest in the boat from Stephens, to Carlin, as they descended the river sometime after the sale, to the effect that "there is one of your boats," pointing to wreck in the river.

A disclaimer, to become binding upon the party, must be made to one *bona fide* seeking information for the protection of his rights, and that he must have acted upon it before it will become binding upon the party making it—Downe v. Flint, 28 Vt. 427. No party is estopped by a declaration made in ignorance of his rights—30 Vt. 307.

The declaration must be wilful, that is, with a knowledge of the facts upon which any right he may have must depend, or with an intention to deceive the other party—Dazell v. Odell, 3 Hill, 215. The doctrine is well stated in Danforth v. Adams, 29 Conn. 107, and is applicable to the case at bar.

In no event could the statements of Goddin estop Stephens unless the latter has assented to or ratified them, (Caldwell v. Auger et al., 4 Minn. 223,) and it is not pretended that he did so—Dexter Lime Rock Co. v. Dexter et al., 6 R. I. 372-3; Harrison et al. v. Edwards, 3 Litt. 252.

The court will observe that plaintiffs never received from Wise any bill of sale, or other writing, showing that they bought the *Grampus*, and they never paid any money on any boat bought by them until the 27th of December, long after defendants had taken peaceable possession.

The instructions given for plaintiffs, especially the first, and those given by the court on its own motion, were erroneous, and those asked by defendants were improperly refused.—See especially 1 Cush. 271; 1 Vesey, Jr. 412; 7 Metc. 188; 1 Cox, 425; 1 Jarm. Wills, t. p. 360-9; 1 Greenl. Ev. § 280; 2 Phil. Ev. 763-5.

*Cline & Jamison*, for respondents.

I. The sale was attended by both parties; and the auctioneer, in the presence and hearing of all at the sale, declared that he sold the wrecks as they lay, and described them by the calls and descriptions found in the report of Col. Bissell, to which defendants made no objection at the time, and participated in the bidding, and purchased a boat lying six miles below the wreck purchased by plaintiffs. The auctioneer, at the time of the sale, announced that he

would sell them as they lay; which he did; so that no confusion could arise as to identity. That was the time for appellants to make their objection; but having refused to speak then, they must now forever keep silent; and are not only not entitled to the wreck in controversy on the ground that they did not buy it, but are also estopped from saying that they did—Lindell v. McLaughlin, 30 Mo. 28; 1 Greenl. Ev. § 207; 26 Vt. 373; 7 Cow. 762; 12 Wend. 423; 7 Johns. 338; 9 Barb. 618.

At the time of the sale, some one stated that the inhabitants on the Tennessee shore where the wreck lay, opposite to Island No. 10, said it was the wreck of the *Grampus* and not that of the *Mohawk*, and the auctioneer remarked "that made no difference," as he was "selling the wreck as it lay on the Tennessee shore opposite Island No. 10." Although the verbal declarations of the auctioneer are not admissible to contradict the written terms and conditions of sale, yet such evidence as to the property intended to be sold by him is proper and competent—Hill. Vend. 94.

A purchaser cannot claim premises, which, though answering the general description in the advertisement of sale, were not in the contemplation of either party at the time of the purchase or conveyance, the purchaser being referred to a more particular description which did not include them—1 Hill. Vend. 12, 323; Calvert v. Williams, 1 Ves. 211.

II. Again defendants are estopped from claiming this wreck, as, while both parties were descending the river together with their hands for the purpose of taking out the iron and machinery from their respective wrecks which they had purchased, one of the defendants pointed out to plaintiff the wreck in controversy as being the one the plaintiffs had purchased and that belonged to them. Whereupon they took out the machinery and iron, at great labor and cost, and placed it on the bank of the river; and the defendants, after this was done, came and took it away, claiming it as their own. This they were estopped from doing; if they are not, then the law allows them to resort to a very cheap

mode to get the boat wrecked and laid on the bank of the river for transportation—26 Vt. 373 ; 12 Wend. 423 ; id. 130 ; 18 Wend. 157 ; 9 Johns. 99; 11 Johns. 122; 16 Mo. 273 ; 30 Mo. 28.

See where oral testimony is admissible to explain the subject matter and relation of the parties—Scott v. Bailley, 23 Mo. 140 ; 7 Mo. 449. Oral testimony held to be competent to show what property was intended to be conveyed—Meyers v. Todd, 26 Ills. 415 ; 33 Vt. 593 ; Bunknoff v. Olfs, 25 Barb. (N. Y.) 27.

Parol evidence is always admissible to apply a written instrument to its proper subject matter—Bennett v. Pierce, 28 Conn. 315.

WAGNER, Judge, delivered the opinion of the court.

The record in this case presents two questions for our consideration. First, whether the evidence in regard to the manner in which the boats were sold was admissible ; and secondly, whether the declarations and actions of Goddin in pointing out the *Grampus* to respondents' agent, Carlin, and thereby inducing him to go to the labor and expense of reclaiming and saving the machinery, operated as an estoppel.

The boats were sold by Capt. Wise, assistant quartermaster of the United States army, in pursuance of an advertisement which he had inserted in the St. Louis, Cincinnati and Cairo newspapers. The notice stated that he would sell the " following named steamboats" (naming them), as they lay, and that payment would be required within ten days from the time of sale.

The boats were sold by name, but the auctioneer and others testify that at the time they were put up they were sold according to a description made by Col. Bissell, of the engineer regiment, who had made a survey of them and given a written statement of their condition and locality. At this sale Stephens, one of the appellants, bought the *Grampus*, and the respondents bought the *Mohawk*. The boats were in the river, about seven miles distant from each other ; and

subsequent information disclosed the fact that Bissell was mistaken in his report, and that the *Mohawk* occupied the position which he had ascribed to the *Grampus*, and that the *Grampus* was situated where he had located the *Mohawk*. The boats were badly wrecked, and there were no names or *indicia* visible by which they could be certainly known or identified.

After the sale, Stephens conveyed part of his interest in the wrecked steamer to Goddin, who was also present at the sale; and Goddin and Carlin, the agent of respondents, went down the river for the purpose of wrecking the boats they had purchased. When opposite to where the *Grampus* lay, (though supposed by the parties at that time to be the *Mohawk*,) Goddin pointed to the boat and told Carlin there was one of his boats. Carlin with his hands proceeded to take out the machinery, tackle, boilers, &c., belonging to the boat and placed them on the bank of the river. Goddin, having ascertained from the inhabitants living in the vicinity that the boat on which Carlin was at work was the *Grampus*, claimed the property and afterwards took and carried it away. It is insisted here that the printed notices were to sell the boats by name, and that the evidence that they were put up and sold according to their position in the river, as described in Col. Bissell's report and survey, was wholly inadmissible, and should have been rejected by the court.

The printed conditions under which a sale by auction proceeds cannot be varied or contradicted by parol evidence of the verbal statements of the auctioneer made at the time of sale, without it be for the purpose of proving fraud—Powell v. Edmunds, 12 East, 7; Shelton v. Livins, 2 Cromp & J. 411; Highgate v. Archway Co., 5 Taunt. 792. But parol evidence that is not repugnant to the printed terms of sale, but is consistent with and explanatory of them, is admissible —Cannon v. Mitchell, 2 Dessaus. 321; Wainwright v. Reed, 1 id. 573–82; Lessee of Wright v. Deklyne, 1 Pet. C. C. 204.

Had the printed notice referred to steamboats afloat, or in such condition that their identity could have been easily

ascertained, we do not think that parol evidence would have been admissible to have varied the terms ; but it is doubtful whether the rule can be properly applied to this case, when the special circumstances are considered. The boats were wrecked and abandoned, their identification at the time of the sale was impossible, and they were rather to be taken as masses of rubbish than specific chattels. The notice was to sell the wrecks as they lay. There was nothing positively known as to the names of the boats, which lay in different places ; but it was known that there were boats irrespective of names lying in certain designated localities. All was involved in uncertainty and doubt, and from the confusion arising from such a state of things they were sold by their names as lying in certain positions.. We are inclined to the opinion that the declarations were not repugnant to or inconsistent with the advertisements, but merely explanatory.

The next question is, were the appellants estopped by the declarations of Goddin in pointing out the wreck to Carlin as respondents' property and conniving at his preserving the machinery at great labor and expense? It may be said that any act or omission of a party unnatural or inconsistent with what he claims to be true may properly be weighed against him. And where a party by his acts or words causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous condition, he will be concluded from averring anything to the contrary against the party so altering his condition.

This court in Taylor v. Zepp, 14 Mo. 482, and Newman v. Hook, 37 Mo. 207, adopted the language of Bronson, J., that to constitute an estoppel *in pais* as against a party there must be, 1st, an admission inconsistent with the evidence which he has to give in the title or claim which he proposes to set up; 2d, an action by the other party upon such admission; 3d, an injury to him by allowing the admission to be disproved.

The facts in this case come up to the full measure of the

learned judge's definition. Goddin pointed the boat out to Carlin and informed him that that was his boat. Carlin acted on that admission; he expended the money of his employers in performing the duty entrusted to him: and to allow Goddin, in the face of his admission by which he induced Carlin to act, to come in with countervailing proof, would not only be inflicting an injury on the opposite party, but would be directly inconsistent with the admissions which he had previously made, and on which the other party acted.

But it is said that although Goddin may be estopped, his admissions cannot affect his co-defendant Stephens. One party, it is true, cannot generally prejudice the interest of another by making statements, unless the latter has in some manner assented to or ratified them. We know of no exception to this rule when the parties do not stand in some relation of privity. But here Goddin and Stephens were joint owners. Goddin represented both parties; he was acting as agent for the partnership in attempting to reclaim and preserve the partnership property, and any act or declaration made by him whilst carrying out the undertaking was admissible as a part of the principal transaction.

Had a trial of the right of property ensued when Goddin seized it on the river bank, and Goddin alone been a party to it on one side, the judgment would undoubtedly have bound Stephens whether he appeared as a party to the record or not; for it seems now to be well settled that a judgment against a servant or agent who defends a suit in right of his master or principal will be conclusive against a renewal of the controversy by the latter—Heller v. Jones, 4 Binney, 11; Case v. Reeves, 14 Johns. 572; Castle v. Noyes, 4 Kerr, 329; Bailey v. Foster, 9 Pick. 139; Peterson v. Lathrop, 10 Casey, 223; Farnsworth v. Arnold, 3 Smeed, 252. But the rule would not extend to the case of a part owner where no agency existed either express or implied; for the admissions of one part owner will not bind the other part owners unless he is constituted the agent of the others in and concerning the thing owned. The case, however, clearly shows an

agency; Goddin and Stephens had a joint interest, and Goddin was acting for both.

The judgment must be affirmed. The other judges concur.