WILLIAM C. HULL, Plaintiff in Error, *v.* PATRICK CAVANAUGH, Defendant in Error.

### June 4, 1878.

1. A decree in partition against minor defendants who were not served with process is void, and could not be cured by proceedings to confirm the partition under the act of November 21, 1857. Acts 1857, p. 52, Adj. Sess.

2. Admissions made under a misapprehension of one's legal rights, without the purpose of influencing the action of another, and not shown to have had that effect, do not estop the person making the admission to afterwards assert the truth.

6 143
114m 640

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

R. S. VOORHIS, for plaintiff in error : Without actual service on minor defendants, a decree in partition rendered against them is void. — *Robbins* v. *Robbins*, 2 Ind. 74 ; *Daniel* v. *Hannegan*, 5 J. J. Marsh. 48 ; *Pond* v. *Doneghy*, 18 Bolt. (Ky.) 558 ; *Rutherford* v. *Richardson*, 1 Head, 609 ; 46 Mo. 391 ; *Peak* v. *McLaughlin*, 49 Mo. 162 ; *Hendricks* v. *McLean*, 18 Mo. 32 ; 27 Mo. 103 ; 26 Mo. 65. Admissions made under a misapprehension of one's legal rights cannot affect him. — *Taylor* v. *Zepp*, 14 Mo. 248 ; *Terrill* v. *Boulware*, 24 Mo. 254 ; *Chouteau* v. *Goddin*, 39 Mo. 229 ; *Garnhart* v. *Finney*, 40 Mo. 449 ; *Smith* v. *Hamilton*, 61 Mo. 83.

ALBERT BLAIR, for defendant in error, cited : *Wheaton* v. *East*, 5 Yerg. 41 ; *Deford* v. *Mercer*, 24 Iowa, 118 ; *Storrs* v. *Barker*, 6 Johns. Ch. 166 ; 27 Barb. 595 ; *Highley* v. *Barron*, 49 Mo. 103 ; *Ferguson* v. *Bell's Administrator*, 17 Mo. 347 ; *Thomas* v. *Pullis*, 56 Mo. 211.

BAKEWELL, J., delivered the opinion of the court.

This was an action of ejectment. The cause was submitted on an agreed statement of facts. There was a finding and judgment for defendant, and plaintiff brings the cause here by writ of error.

Joseph S. Hull and Elizabeth, his wife, owned adjoining tracts in the Grand Prairie common fields. They laid the property out in one plat, under the name of "Joseph S. Hull's subdivision," and sold lots from time to time, according to the plat, giving deeds in proper form. Mrs. Hull died in 1856, without a will. She left as her sole heirs two children by her husband, J. S. Hull, — Louisa, who afterwards married Cornelius Voorhis, and the plaintiff, William. At the October term, 1856, of the St. Louis Land Court, Joseph S. Hull, who, as tenant by the curtesy, had a life-estate in so much of the land of "Joseph S. Hull's subdivision" as had belonged to his wife, began proceedings in

that court for partition of a portion of the subdivision, embracing lands which he owned and lands which were owned by his wife when she died. He made his children defendants in this suit; they were both minors, and neither of them was served with process. A guardian *ad litem* was appointed for them, who filed an answer. In this suit a decree was rendered that partition be made according to the prayer of the petition, and commissioners were appointed, who reported that partition in kind could not be made. A sale was ordered, at which Joseph S. Hull became the purchaser, in March, 1857. The lot in controversy in this suit, which is a part of the property owned by Mrs. Hull, was a part of the property purchased at partition sale by Joseph S. Hull. At the October term, 1858, of the Land Court, Joseph S. Hull filed a petition against his children, who were still minors, to confirm the partition. Due service was had; a guardian *ad litem* was appointed; he answered for the defendants, and a decree was entered according to the prayer of plaintiff. After the purchase by Joseph S. Hull at partition sale, he was appointed guardian of the estates of his two children. As guardian, he described in his inventories the unsold portion of the lands in "Joseph S. Hull's subdivision" which had belonged to his wife, describing the estates of the children as fee-simple interests subject to his life-estate. In his accounts he charged himself with the interests of the children in the proceeds of their mother's land sold in partition. On June 15, 1859, he settled with Mrs. Voorhis, and fully paid her, partly in land which he had bought at the partition sale, and partly in notes of himself and others. By deeds of April 2, 1857, and March 30, 1858, Hull conveyed the lot in dispute to his niece, Margaret Hull, now Mrs. Digby, who conveyed to defendant in April, 1876. She paid taxes on the land up to the time of the sale to defendant, who has paid the taxes since. The land remained vacant, and no possession was

ever taken under the deeds until April, 1876, when defendant placed building-materials upon the lot.

Joseph S. Hull died in July, 1859. His only heirs were plaintiff and Mrs. Voorhis. By his will, after some special legacies, he devised his property to his children in equal shares. Mrs. Voorhis died in August, 1859, intestate and without issue. Cornelius Voorhis, the husband of Louisa, was executor of Joseph S. Hull. He inventoried the land bought by Hull in the partition sale. An order of sale was made of the lands in 1874, at which one Helmers, the partner of the executor, bought. In May, 1867, plaintiff, by next friend, instituted proceedings in the Circuit Court to set this sale aside. On November 9, 1867, plaintiff became of age, after which an amended petition was filed by him in the suit just mentioned, in which he alleges that his father died seized of an estate in fee-simple of the real estate purchased by him in partition. The sale to Helmers was set aside on the ground of fraud, and the decree is still in force. On August 17, 1868, plaintiff conveyed to William C. Hull, Sr., a large portion of the lands recovered in the suit against his father's executor, and by the same deed assigned for value his claim against his father for the amount with which he was charged, as guardian of plaintiff, in the Probate Court.

It is admitted that plaintiff would testify that when plaintiff filed the amended petition against the executor, and when he gave notice of his claim against his father's estate, and when he conveyed to William C. Hull, Sr., he had not been advised, and had no actual knowledge, that these acts would affect in any way any claim that he might have to, or any of his rights in, his mother's estate. It was not his intention to waive or surrender any such rights; and he was in fact ignorant, in point of law, of the relation in which he stood to the property of his mother, and would have asserted any claim that he had to it, if he had known of its existence.

We do not think that the judgment for defendant can, on this statement of facts, be sustained. As no declarations of law accompany the judgment, we do not know on what theory the learned judge of the Circuit Court proceeded. It is manifest that the original proceedings in partition were bad. The Land Court had, under the existing laws, as full jurisdiction of suits for partition of lands as the Circuit Court would have had had the Land Court not existed. The Land Court was not a court of inferior jurisdiction, in such a sense as to detract in any way from the fullest credit to be given to all its acts in matters regarding lands ; but, independently of the fact that at the time of this partition suit, there was no provision in this State for making partition of lands by proceedings in court, except where lands were held in joint tenancy, tenancy in common, or coparcenery, the decree in the partition suit was absolutely void because there was not service upon the minor defendants as required by law. Stats. 1855, p. 1110, sect. 1 ; 26 Mo. 271 ; *Smith* v. *Davis*, 27 Mo. 298 ; *Shaw* v. *Gregoire*, 41 Mo. 407.

The proceedings to confirm the partition did not cure the defect. They were had under the act of November 21, 1857 (Adj. Sess. Acts 1857, p. 52), entitled "An act respecting lands heretofore sold in partition, and for other purposes." That act, as will be seen by reference to its provisions, has no application to the case of a partition in which the defendants are minors. The so-called defendants in the Hull partition were never properly made parties to that suit, and no decree of confirmation under the act of 1857 could cure the defect, or affect their rights in any way. Unless plaintiff is estopped to assert it, he would seem, therefore, to have a good legal title to the lot in question on which to maintain this ejectment.

Defendant had the same means of knowing the title of plaintiff to these lands as plaintiff himself had. It was all a matter of record, patent to every one interested, and

to the whole world. If plaintiff acquiesced in the partition sale, and if defendant purchased under it, they both acted under the erroneous impression that the decree in the case, which was absolutely void, was of force, or that the proceedings instituted to confirm the original decree were available for that purpose. Plaintiff had done nothing for the purpose of influencing the conduct of defendant, nor is it to be supposed that defendant has bought in consequence of any act or declaration of plaintiff. Neither the statement in the amended petition in the proceedings to set aside the executor's sale, nor the acceptance of the proceeds of the partition sale, formed the inducement for the purchase by defendant. Plaintiff has not stood by with knowledge of his rights, and knowing that defendant was expending his money on this property, and then, when the mischief was done, which he could have prevented by a word, stepped forward to obtain the benefit of a dishonest silence. Whatever admissions were made by plaintiff, were made in misapprehension of his legal rights; and whatever loss may accrue to defendant is a consequence, not of these admissions, but of his carelessness, or of the carelessness of his agents in the matter of examining the title.

The cases to which we are referred by counsel for defendant in support of the position that plaintiff is estopped are not parallel with the case at bar. In *Deford* v. *Mercer*, 24 Iowa, 122, the plaintiffs received the purchase-money after they became of age, and after the proceedings in equity to set aside the sale were begun by them; and they were fully cognizant of the facts, and of their legal rights under those facts, and for these reasons were held to be estopped to say that the sale made by their guardian was void. The case in 5 Yerger (*Wheaton* v. *East*) is a case of affirmance by one, after he became of age, of his voidable deed as an infant, and decides nothing that is not long well settled in this State. The plaintiff had expressed his satisfaction with the sale four years after his majority, and had seen the

bargainee erecting valuable improvements without objection. 27 Mo. 412. In *Stone* v. *Baker*, 6 Johns. Ch. 166, the person having the legal title had acquiesced in the sale by another claiming the title, and had advised and encouraged the sale : he was held to be estopped to set up title in himself, as against the purchaser whom he had fraudulently induced to buy. *Tilton* v. *Nelson*, 27 Barb. 595, was the case of a married woman, after the termination of her coverture, recognizing the validity of certain conveyances made during her coverture, and having accepted the surplus remaining after forclosure, after her husband's death.

But our attention is not called to any case, and we believe none can be found, in which admissions made in ignorance of one's legal rights, without intention of influencing the conduct of another, and which are not shown to have had any such effect, have been held to estop the person making the incautious admission afterwards to assert the truth. 14 Mo. 248 ; 24 Mo. 254 ; 39 Mo. 229 ; 40 Mo. 449 ; 61 Mo. 83.

The case of *Hull* v. *Geyer*, submitted on the same day with this case, presents facts substantially the same ; and in deciding this case we have had the advantage of the briefs of learned counsel for defendant in both cases. The cases commented upon above are cited by counsel in the present case. In *Hull* v. *Geyer*, the defendant had erected valuable improvements upon the premises, but it did not appear that plaintiff had any knowledge of the fact. In this case it does not appear that any building had been actually erected. We hold that there is no material difference between the two cases in this respect, and our reasoning in this case applies to both.

It is urged that it is inequitable that plaintiff should retain the purchase-money received from his father's estate, and also have the land. There is no such question presented by the record. The answer sets up no such defence ;

and it does not appear that Mrs. Digby, to whom J. S. Hull conveyed, paid any thing for the land. It is stated in the argument of counsel for plaintiff that the conveyance to her was purely voluntary. The court below held that, on the pleadings and the agreed facts, plaintiff was not entitled to the land. We think that the learned judge erred in this. It by no means follows, however, that because plaintiff is entitled to recover the land he would be also entitled to retain the purchase-money. *Kerr* v. *Bell*, 44 Mo. 120; *Highley* v. *Barron*, 49 Mo. 103.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.