HAMILTON & YOUNG *v.* JOSEPH G. LOCKHART and others.

1. SALE OF LANDS BY ADMINISTRATOR : NO STATUTORY LIEN WHEN SALE VOID : RIGHT OF PARTY PAYING PURCHASE-MONEY TO BE SUBROGATED.— When an administrator's sale of lands, made by order of the Probate Court, is void for the want of notice to the proper parties, there is no *statutory* lien in favor of the administrators, and no right of the administrator to which a third party paying the purchase-money can be subrogated.

2. SAME : CASE IN JUDGMENT.—The administrators of C., by order of the Probate Court, sold the lands of their intestate for the purpose of paying debts, and received from the purchaser, L., his bills of exchange, accepted by H. & Y. The sale was void for the want of notice to some of the heirs. H. & Y., having paid the bills of exchange, filed their bill in equity for the purpose of being subrogated to the statutory lien of the administrators. Held—That there was no statutory lien in favor of the administrators, to which H. & Y. could be subrogated.

3. EXECUTORS AND ADMINISTRATORS : SALES OF LAND BY, VOID WHEN PARTIES IN INTEREST NOT NOTIFIED, OR WHEN THEY FAIL TO GIVE BONDS AS PRESCRIBED.—An order of the Probate Court for the sale of lands of a decedent for the purpose of paying debts, is void if the parties in interest have no notice of the proceeding, or if the court does not require the executor or administrator to give the bond prescribed by the act of Nov. 30th, 1858. Pamphlet acts of 1858, 187 ; 26 Miss. R. 646 ; 34 ib. 179 ; 34 ib. 304.

4. CHANCERY PLEADING : DEMURRER TO BILL CHARGING FRAUD.—A demur-

rer to a bill in equity charging fraud, will not be sustained, if the fraud is so charged as to make a case for equitable relief.

APPEAL from the Chancery Court of Lowndes county. Hon. H. W. Foote, chancellor.

Appellants, in 1866, filed their bill against Lockhart and wife, Moody, and the heirs of Joseph B. Cobb. The bill states that Billups and Clayton, as administrators of J. B. Cobb, petitioned the Probate Court of Lowndes county for a decree to sell the lands of their intestate. That, in order to pay debts, it was necessary to sell lands or personal property; and the sale of the lands would best promote the interest of all parties. That the Probate Court decreed that certain parcels of land be sold on a credit of one, two, and three years, the purchase-money to be secured by accepted bills of exchange on Mobile. That on the 18th day of April, 1859, the lands were sold to the highest bidder, and Lockhart became the purchaser. That Lockhart drew his three bills of exchange on Mobile for the amount of the purchase-money, which were accepted by the appellants. A transcript of the proceedings in the Probate Court was filed as an exhibit to the bill, and the substance of the same is set forth in the opinion of the court.

The bill further states, that the estate of Cobb was largely indebted to appellants, and that they agreed to take the bills drawn by Lockhart and accepted by themselves in payment of their debt. That the administrators accepted the proposition, and that the estate was credited with the amount of the bills. That by the statute of Mississippi the administrators have a lien on the lands as security for the payment of the purchase-money, that they were the accommodation acceptors of Lockhart, and having paid said bills, they stand in the relation of securities, and in equity entitled to be subrogated to the statutory lien of the administrators.

That Lockhart is insolvent; that he fraudently, on the 23rd of August, 1865, conveyed the lands purchased by him from the administrators of Cobb to his wife; that the conveyance was without consideration, and that Mrs. Lockhart had actual and

constructive notice that the purchase-money of said lands was not paid, and of the statutory mortgage. That on the 17th April, 1866, Lockhart, becoming convinced that the conveyance to his wife was fraudulent, conveyed the same lands to Moody, his father-in-law, for the purported consideration of various debts owed by Lockhart to Moody, running through a series of years, and for a large amount; that the conveyance to Moody is fraudulent; that he is not the purchaser for a valuable consideration without notice.

That the estate of Cobb has been fully administered, and the administrators discharged. That the proceeds of the sale of the lands went to the redemption of the personal property from the debts of the estate; that the personal property was divided amongst the heirs and distributees of the estate.

Lockhart and wife, Moody, and the heirs of Cobb are made parties defendant. The bill prays that appellants be subrogated to the rights of the adminitrators of Cobb, and that the statutory mortgage be foreclosed, or if they should be mistaken in this view of the case, and that the legal title to said land is still in the heirs of Cobb, then that they be subrogated to the rights of the heirs, and that the lands be sold to pay the debt due them, unless the heirs will redeem them by refunding the amount paid, and that the conveyances to Moody and Lockhart's wife be declared void.

The heirs of Cobb answered, admitting the facts as stated. They admit that the estate has been finally settled, that the amount of the sale of the land went to the release of other property, which was distributed to them. They admit the benefit received from the sale of the land, and if it should be found that the title to the land is still in them, that appellants, having paid for the same, ought to be substituted to all their rights, and that the lands should be sold for the benefit of appellants, and they estopped from setting up any claim to the same.

Lockhart and wife, and Moody, demurred for the following special causes:

1. That the sale of the lands was void, and there was no lien created to which appellants could be subrogated.

2. That the lien was created for the benefit of the estate, and could not be extended by subrogation to a surety of the purchaser.

3. That the lien could not be extended in this case, because the debt was extinguished, as soon as created, by agreement between the parties.

4. That appellants did not pay the debt as the security of Lockhart, but by virtue of an arrangement entered into for their own pecuniary profit and benefit.

5. That appellants are the purchasers of the debt created by Lockhart, and that the same was not paid by them as mere sureties.

6. That appellants are not judgment creditors, and cannot impeach the conveyances for fraud.

7. That the alternative prayer of the bill is illegal, inconsistent, and beyond the power of the court.

8. That no equity appears on the face of the bill.

The demurrer was sustained and the bill dismissed as to Lockhart and wife, and Moody.

The error assigned here is to the action of the court below in sustaining the demurrer and dismissing the bill.

*Christian & Sykes*, for appellants, contended : 1. That the sale was not void. The heirs of Cobb were made parties by service of citation and by publication in the manner pointed out by the statute. Rev. Code, 446, art. 48. 2. That no bond was given and none required. The sale was made under art. 93, p. 447 of Rev. Code, where it is permitted to sell lands in preference to slaves and other personal property. Art. 89, p. 446 of Rev. Code, provides for the sale of lands in whole or in part, where the estate is not insolvent and where the personalty is not sufficient to pay the debts. In such sales the overplus, after paying the debts, would not belong to the administrator, but to the heirs-at-law, and should be divided out to them, as the land would have descended; consequently was outside of the administration and not covered by the administration bond. This defect in the law was remedied by the act of 1858, P. acts, 187,

which required the administrator to give a new bond, conditioned to account for the money arising from the sale of the lands according to law. This act of 1858 has no bearing on any other article in the Code, and this being a sale under art. 98, p. 447, no bond was required; it is covered by the ordinary administration bond. *Lee* v. *Gardner*, 26 Miss. R. 543; *Williamson* v. *Williamson*, 3 S. & M. 748. 3. The sale was not void because the administrators took bills of exchange from the purchaser instead of bonds with security. No irregularities of the administrator in making the sale will render it void. *Stephenson* v. *McReary*, 12 S. & M. 54.

The statute which requires an administrator to take bond with security is merely directory; it does not preclude the administrator from taking any other form of security.

The sale was reported to the court, and that they had taken bills of exchange therefor, and the same confirmed.

A note taken for the purchase-money of land, though not taken in conformity to the statute, does not affect statutory lien. 5 Sm. & M. 106.

Where the security taken was notes payable in bank, it was held the sale was not vitiated thereby. *Hoggett* v. *Wade*, 10 S. & M. 143.

If there was a valid judgment of the court ordering the sale, the irregularities of the administrator in giving notice or in taking a different security from that prescribed by the statute, will not vitiate the sale. *President and Selectmen of Natchez* v. *Minor*, 10 S. & M. 265; *Barnes* v. *McGee*, 1 ib. 219; *Elliott* v. *Conwell*, 5 ib. 91.

4. But the statutory lien is not alone for the benefit of the estate, a surety paying the purchase-money is entitled to be subrogated to all the rights of the estate. It is not required that the party paying should be technically a security; if he stand in the relation of surety he is entitled to be subrogated. 1 Story's Equity, §§ 327, 499, 501, 502; 1 Johns. C. R. 409; 2 ib. 504; 4 ib. 545; 6 Paige, 521; 10 Paige, 445; 23 Miss. R. 372; 1 Comstock, 595.

5. An accommodation acceptor is a surety for the drawer.

3 Barbour, Sup. Ct. R. 635; 13 East, 431; 16 Johns. R. 70; Byles on Bills, 475; Edwards on Bills, 533; Chitty on Bills, 318.

6. The alternative prayer of the bill is consistent with the double aspect with which the bill is framed. The court having assumed jurisdiction for one purpose, will retain it for all purposes until the rights of the parties are fully adjudicated.

7. The bill charges fraud, and this must be answered under oath. The party must purge himself of the charge, as fraud will give the court jurisdiction, even though it were doubtful from the fraud charged whether or not the court would grant the relief sought. 2 Paige, 246, 251; 8 S. & M. 773; 4 Des. 251.

*Harrison* and *Crusoe*, on same side, contended:

I. It was error to sustain the demurrer and dismiss the bill.

The bill charged *fraud* directly, positively, and circumstantially upon the parties who demurred. The defendants were bound to answer the fraud. The demurrer was entire to the whole bill, and not to a part only. It was not a demurrer to separate and distinct parts of the bill for separate and distinct causes, but a general demurrer to the whole bill, with several special causes assigned. Each cause is to the whole extent of the bill. Story's Eq. Pl. §§ 442, 443, 444.

It is frequently the case that different modes of defence may be adapted to different parts of a bill; but if it contain an allegation of *fraud*, it is a general rule that the allegation of fraud must be denied by an answer, whatever defence may be adopted to the other parts of the bill; because fraud gives jurisdiction to the court, and lays a foundation of relief; hence a general demurrer to a bill containing such an allegation cannot be allowed. So if the defendant should plead to the bill, he must still deny the fraud by answer as well as by averment in the plea. *Niles et al.* v. *Anderson et al.*, 5 Howard Miss. R. 386; *Stovall* v. *Northern Bank*, 5 Sm. & Marsh. 17 Mitford's Pl. 298, 238 (301, 362, Am. ed. 1833); *Carter* v. *Longworth et al.* 4 Hammond, 384; *Allen* v. *Randolph*, 4 Johns. Ch. R. 693; *Higgenbotham* v. *Burnett*, 5 Johns. Ch. Rep. 184.

30

It was never supposed that the rule could be evaded by assigning causes and pointing ont errors specially in a demurrer. A special demurrer differs from a general one merely in pointing out the particular imperfections.   Cooper's Equity, 118; Story's Eq. Pl. § 455.

II.  The bill is framed with a double aspect.

The demurrer sets up that the sale of the land was *void*. If so, Lockhart and Moody have no title at all.  Lockhart, under whom Moody claims as a fraudulent purchaser, with notice, paid no money, and has neither a legal nor an equitable title. Hamilton and Young paid all that was paid, and the whole of the purchase-money, and the heirs received and hold the money, and are willing to do justice and equity.   If the bills of exchange were *void*, and if the sale was void, they are necessarily so, what claim has Lockhart, or his vendee, his father-in-law, under a *void sale?*   The heirs, who have answered the bill, are ready to do whatever the court may direct.   They are willing, if the sale is void, to make a title to the party who is in equity entitled to the same.   To whom ought they to convey?

The bill was so framed as to meet this view of the case.  The claim of the complainants would be founded, in such case, not on contract, but would be the offspring of natural justice and the consent of those having the title.   *Gowing* v. *Bland's Admrs., &c.*, 2 Howard's Miss. R. § 15, 816 ; 4 Randolph, 444.

Equity looks upon that as done, which ought to be done.   1 Story's Eq. Jur. § 64 (g); 1 Willard's Eq. 47, 48.

If the sale was void, and the parties supposed it to be valid when it was not, the court could order the purchase-money to be refunded, *or the land subjected to its payment.*   The heirs are willing to retain the purchase-money, and to convey the legal title to the party who is *equitably* entitled to the same. The bill charges, and the demurrer admits, that the plaintiffs paid the purchase-money as *sureties.*

If the contract was *void*, it was made in mutual error.   1 Story's Eq. Jur. § 134 ;  Willard's Eq. 70.

If the contract was *void*, what equity have the parties who

demur? What right have the parties illegally in possession under a *void sale* to complain? How can they rightfully object to any transfer of the *title?* The complainants will resort to their remedy at law when they obtain the *legal title.* Their remedy is certainly not at law at present. The complaint is filed by Hamilton and Young, who paid the money under a *void sale,* and not by the parties in possession under such sale, or by the vendors. The bill is against the vendors as well as the vendees, and the vendors, who under the *void sale* have the legal title, are willing to keep the purchase-money and do justice and equity. And if the sale is *void,* as the demurrer affirms and asserts, what right have the parties who demur to complain or object? If the sale is *void,* they are mere intruders. They certainly have no claim in law or equity under a *void sale* to keep the land, and that, too, without paying for it. This is not a suit at law by the parties having the legal title to recover possession, but is a complaint against them, as well as the parties in possession, to have the purchase-money refunded by the parties who paid it, or to have the land itself subjected to its payment. This is the aspect of the case supposing the sale to be *void,* as assumed and asserted by the demurrer.

As the bill is in the alternative, the court could set aside the sale, declare the property still to be a part of Cobb's estate, descended to his heirs, and decreed to be sold by the preference of the heirs and with their approval, or have the statutory lien enforced.

An illegal disposition of the property by an administrator is no disposition at all. *Baines* v. *McGee,* 1 Sm. & Marsh. 219.

III. The doctrine of substitution in equity is not regarded *as founded on contract,* but as the offspring of natural justice, and the courts should rather incline to extend than restrict the operation of a principle so elevated and pure. 2 Howard Miss; Rep. 815, 816; 4 Rand. 444; 2 Leigh, 70; 10 Peters, 567; *Humphreys* v. *Vortner et al.,* 1 Freeman's Ch. R. 251.

The case of *Stanwood* v. *Clampitt,* 23 Mississippi Rep. 372, was where a surety upon paying the notes was subro-

gated to the rights of the administrator in the statutory mortgage.

In *Humphreys* v. *Vortner et al.*, 1 Freeman's Ch. R. 251, it was held : That an accommodation endorser stands in the light of a surety to the maker, and upon paying the debt, is entitled to be substituted to all the securities held by the creditor.

The bill charges, and the demurrer admits, that the bills of exchange were drawn payable in one, two, and three.years, and that the plaintiffs were *accommodation acceptors* to the knowledge of all parties, and why, in equity, is not an accommodation acceptor, who has paid the bill, as much a surety as an accommodation drawer or endorser? or as much a surety as a joint and several maker who has paid the note on which he was an accommodation maker? The suit is not on the bill itself; for that the surety has paid, and it is the fact of being a surety in reality, and not according to the face of the paper, and the payment of the money, that entitles the party, in equity, to be subrogated to the rights of the creditor in the mortgage.

Where a bond is given, and at the same time a mortgage made for securing the debt, the surety, if he pays the bond, has a right to stand in the place of the mortgagee. *At law*, the co-obligor, who was really a surety only, would have an action against the principal, for money paid to his use, and he can have nothing more. The case standing thus *at law*, the rule in equity is, that a surety paying off a debt shall stand in the place of the creditor, and have all the rights which he has, for the purpose of obtaining his reimbursement. It is hardly possible to put his right of substitution too high, and the right results more from equity than contract or *quasi* contract ; unless in so far as the known equity may be supposed to be imported into any transaction, and so to raise a contract by implication. Willard's Eq. 110, 111; *Craythorne* v. *Swinburne*, 14 Vesey, 160, 162; *Elwood* v. *Dieffendorff*, 5 Barbour, 398; *Mathews* v. *Aiken*, 1 Comst. 595.

The ground of relief does not stand upon any notion of mutual contract, express or implied, but arises from principles of equity, independent of contract, and arises from the equitable

obligation of the real principal to pay the debt. A surety, *or a party who stands in the situation of a surety*, is entitled to be subrogated. *Mathews* v. *Aiken*, 1 Comst. 599, 600, &c.; *Hays* v. *Ward*, 4 Johns. Ch. Rep. 130; *Hodgson* v. *Shaw*, 3 Mylne & Keene, 183; Story's Eq. Jur. § 493, and notes and cases cited; *Norton* v. *Coons*, 3 Denio, 130; 1 Story's Eq. § 499; 5 Barbour, 398; 1 Hill, 652; 6 Paige, 521.

An accommodation acceptor as between himself and the drawer, is entitled to be regarded in the light of a *surety*, and upon the payment of the bill, is entitled not only to have the full benefit of all additional securities which the creditor has taken, but to have the bill itself transferred to him. He has a right to be subrogated to all the rights of the creditor whose demand he has paid. *Sublett* v. *McKinney*, 19 Texas, 438; 20 United States Dig. p. 157, §§ 47, 48.

Although at law, one who accepts a bill for the accommodation of the drawer is regarded in favor of a *bonâ fide* holder as the principal debtor, yet as between such acceptor and the drawer, the former stands in the relation of a *surety*, and in equity he is entitled, on payment of the bill, to be subrogated to the position of such holder of the bill, in respect to any securities held by him. *Bank of Toronto* v. *Hunter*, 4 Bosw. (N. Y.) 646; 21 United States Dig. p. 96, § 34; *Gomez* v. *Lagarues*, 1 Dev. Eq. Rep. 217; Edwards on Bills and Notes, p. 431, 315, 316 and note, 533; Byley on Bills, 323 (4 Amer. Ed. 475 and note); *Baker* v. *Martin*, 3 Barbour Sup. Ct. Rep. 634; *Steadman* v. *Martinat*, 13 East, 431.

IV. The lien given by law on the property of a deceased person, when sold by order of the Probate Court, is to be considered as a mortgage duly recorded. *Miller, Adm.,* v. *Kehun et al.,* 2 Sm. & Marsh. 687; *Elliott et al.* v. *Connell,* 5 ib. 91, 107, 108; *Hoggatt* v. *Wade et al.,* 10 ib. 143; *Walker* v. *Fuqua,* 24 Mississippi, 640; *Stanwood* v. *Clampitt,* 23 ib. 372.

*The record which authorizes and completes the sale* is all the law requires to create a mortgage in favor of the administrator. *Walker* v. *Fuqua,* 24 Mississippi, 640.

The moment that the plaintiffs, as sureties, made the payment, their right to be subrogated to the rights of the administrators under the statutory mortgage became complete. *Stanwood* v. *Clampitt*, 23 Mississippi, 374.

The bills of exchange are but *evidences* of the amount of the purchase-money. They were paid by the sureties. The debt that the statutory mortgage secured was the price for which the land sold. The amount of the purchase appears by other proof, and from the record.

The proceeding is not founded on the bills of exchange, but on the statutory mortgage, given by law to secure the debt. *Elliott* v. *Connell*, 5 Sm. & Marsh. 91.

The statutory lien is intended as other and further security, and the performance or non-performance of the administrator in the performance of his duty in taking personal security for the payment of the purchase-money does not affect the statutory lien; each is intended to be cumulative. *Hoggatt* v. *Wade et al.*, 10 Sm. & Marsh. 143 ; *Elliott* v. *Connell*, 5 ib. 91.

The equity is founded not on an actual, but on a legal mortgage. *Miller, Adm.,* v. *Helum et al.*, 2 Sm. & Marsh. 698 ; *Walker* v. *Faqua*, 24 Miss. 644, 645.

V. The sale by the administrators is believed to be regular in every respect. It was made under ch. lx. § xi. art. 93, Rev. Code. The estate consisted of real estate and slaves and other personal property, and it was preferable to sell a part of the land for the payment of debts. Rev. Code, p. 447, art. 93.

The administrators had given bond as such. The property was not sold under art. 89, Rev. Code, p. 445. The act of Dec. 3d, 1858 (Acts 1858, p. 187), applies to article 89, chapter lx. requiring the execution of a bond. It is not admitted that the sale was void; but if it was void, still there is equity in the bill. See brief of associate counsel.

VI. The parties having ratified and acquiesced in the sale, and received the proceeds, are estopped from denying the validity of the sale. *Joslin* v. *Caughlin et al.*, 32 Mississippi, 106 ; *Lee* v. *Gardiner*, 26 Mississippi, 522, 548. If the heir, though a *feme covert*, receive from the administrator the proceeds of a

void sale of her land, it will be an affirmance of the sale, and she will be estopped from denying its validity. *Kemp & Wife* v. *Pintard*, 32 Mississippi, 324, 330; *McLeod et al.* v. *Johnson et al.*, 28 ib. 378; *Crowder et al.* v. *Shackleford*, 36. Mississippi, 359; 1 Greenleaf: Ev. §§ 27, 207; *Joslin* v. *Caughlin et al.*, 32 Miss. 106.

*Sale, Phelan & Dowd,* for appellees, contended:

I. It is the general principle, that a *surety* will be subrogated to the rights of the *creditor* after payment of the debt. An administrator has a lien on land, sold under order for the purchase-money. Can a surety, paying the purchase-money, be subrogated to this *peculiar* lien? To admit the principle, forces the doctrine of *subrogation* and of *lien* to an extent inconsistent with public policy. *All* liens on *land* are objectionable, as tending to injure the innocent, and as fettering alienation, by separating the *title* from the *possession.* The vendor's lien was supposed to have carried the doctrine to its extreme point. It was sternly contested—its recognition has been generally lamented—and is never favored. And yet, to extend the lien of an administrator to a *surety* after the *estate* has no farther interest in it, would be to urge the doctrine greatly beyond that established by the vendor's lien. In the latter case, where the conveyance is absolute, the lien is merged in *personal security*, and, if not thus lost, it cannot be enforced against purchasers *without notice.* On the contrary, the administrator is required to make an *absolute conveyance*—he must, also, take personal *security*—he is not required to *register* any evidence of the *lien*, and the purchaser assumes *possession ;* yet, this lien can be enforced *by the administrator*, to obtain payment of the *purchase*-money, against innocent *bonâ fide* purchasers! Surely, it should *stop there.* As applicable to the *administrator*, and to secure—beyond *his* power to prevent—payment *to the estate*, the lien is based upon an *extreme necessity*—that of securing the dead, and helpless living, and creditors, against the wickedness or negligence of administrators. But this lien is not favored, save in view of the *necessity* in

which it originated. Its *peculiar* character has been marked by the court. It is termed " a secret equity." 27 Miss. 779. " A *thing* of the *imagination*." 2 S. & M. 698. " A latent equity." 1 S. & M. ch. 138. An *ideal* mortgage. 24 Miss. 645, case. The *special* object of the lien is, to secure the " *estate*." This court has declared, that " the mortgage, given by statute, is *intended* for the benefit of *the estate*. 1 S. & M. 208. " It is given for the *protection of the estate*." 2 S. & M. 687. When, therefore, that object is gained—the estate paid—it should go no farther. To *subrogate* a *surety*, making the payment to the place of the administrator, and to invest him with his right of lien, is not necessary to effect the object of the statute ; and requires a *disregard* of *additional* facts, more strongly tending to deceive innocent parties, and, consequently, more offensive to public policy. In *such* case, although an administrator declare, *when applied to*, that the debt is paid, and he claims no lien on the land, although. an examination of the matters of the estate shows that the debt has been paid, although the estate may have been finally settled, and the administrator discharged years ago ; and, although nothing is required to appear, and rarely would appear, showing that any person, other than the *purchaser*, had made the payment ; *yet*, if a *surety* had made payment, and laid the matter aside, he is permitted to enforce this " thing of imagination," now become the " *shadow* of a *shade* " against an innocent purchaser !

But suppose he desires to inquire of the *surety*, whether *he* paid the money. He finds he is a non-resident—that he is dead—that he cannot find him at all ! This state of facts may exist, and yet— within the limits of the statute of limitations—a party purchases *at his peril !* whilst under the *exceptions* of the statute the danger of loss is almost indefinite in duration. Such a principle is pregnant with evils, and would be disastrous in its influence upon the alienation of property, so large a portion of which connects its title with sales by administrators. Let the principle stop with the administrator. Let the party becoming a *surety*, guard himself, in some of the numerous ways at his command, and which will require him to make *some record* of his claim,

This would avoid all danger to the *surety*, and avoid all the evils arising from the principle sought to be established. This court has strongly criticised the doctrine of the *vendor's* lien, declaring that it " was a *secret, invisible* lien, subject to be used to the detriment of innocent persons," and " against the policy of the law." I ask the court to refer to the whole argument. 23 Miss. 124. This *statutory* lien, even in behalf of the *administrator*, is more obnoxious to the objections of the court than the lien of a *common vendor;* but, to apply it in behalf of a *surety*, under what must, or, at least, may be the *new facts* of the case, would conflict with every principle involving the protection of innocent parties, and the free alienation of real estate.

I am not unaware that a case in 23 Miss. 372, seems to recognize, as a general principle, the right of a *surety* to be subrogated to the *lien* of the *administrator*. The case is a brief one, and appears to have been decided without argument. The opinion contains no *reasoning* to establish the principle, but simply *asserts* it. Besides, no present member of the court was then on the bench, and Judge Smith took no part in the decision. I therefore feel less hesitation in asking a review of the principle it asserts, if applicable to case at bar.

But admit the proper application of the principle asserted in that case, *as between the parties in contest*, it cannot be conclusive of the case at bar. They are essentially different. That case was between *joint securities* of the purchaser, and involved the question of *contribution* between them. *This* is not *that* case.

II. If a *surety* will be subrogated to the lien of the administrator, at least he ought, *strictly*, to maintain that *character*. These complainants are *not* such. " A suretyship is an *accessory* agreement by which a person binds himself for another, *already bound;* and promises to the creditor to satisfy the obligation, *if the debtor does not.*" 2. Bouv. Dic. " Suretyship." And, in reference to the right of subrogation, this court has said, that it exists in cases " where a party is only *secondarily* liable." 24 Miss. 665. An *acceptor* of a bill of exchange is not second-

arily, but *primarily* liable for its payment. He is not liable by force of *any contract* between the drawer and himself. The *form* of the draft presumes funds in hand, which he is *ordered* to *pay out.* If he *accept*, he admits he has such funds, the payment of which invests him with no right of suit on the bill, and only constitutes an item in *open account* with the drawer. Parsons, vol. 1, 323, 324; Byles, 308. He may have funds when the bill *is drawn*, and afterwards permit them to go out of his hands. He may have funds *after* drawing and *before* maturity, and otherwise dispose of them. *When* does he become security? Does his suretyship shift with the shadows, as determined by the fluctuating balances of a commission merchant's account?

As an *acceptor* he is no surety. If he acknowledge that he has funds of the drawer, when he has *not*, the presumption of law is, that he then *loans* the amount to the drawer; and for *every* purpose he is considered his *general* creditor. *Payment* extinguishes the bill, and the acceptor only has claim for the amount recoverable as an open account. "An accommodation acceptor is not a surety." 4 Dana, 352; 1 Dev. Ch. 205.

III. Admit that an accommodation acceptor *is* a surety, where the matter is confined to a *single* transaction, and would be subrogated to the liens of the creditor in such case, as against the principal; yet he will not be so regarded where the acceptance is *one of many* similar transactions, among other items of a general, open, *mutual* account, between a commission merchant and his customer, the one resident on the sea-board, the other living in the interior. That such was the position of the defendant Lockhart, and the complainants, appears on the bill. In such case will he be permitted to select from the running account such special items of payments of debts as gave to the *creditor* peculiar rights against his customer, and claim to be subrogated to them in the character of *special surety?* He will not, even in cases less fraught with objections than exist against the grant of the relief prayed.

IV. But admit that, as a *general* rule, a merchant would be permitted thus to assert his character as a *surety*, and obtain the

benefit of a creditor's securities, in this peculiar case, will he not be required to have become a surety in the *manner* specially designated in the statute? If he asserts a right under that statute he must be the party created by it. Now, the "security" specified is upon a "*bond* given by the purchaser;" a sealed instrument in every particular radically different from an accommodation bill.

V. There never was any lien in this case. The co-etaneous arrangement, agreement, and payment between complainants and the administrator prevented it from arising. 25 Miss. 88.

The complainants did not pay said bills, only when forced to do so, after *default* by the principal, and in strict accordance with their contract suretyship. 1 Gilman, 409.

The complainants became *purchasers* of said bills upon a *separate* contract with the administrator, by the settlement of claims held by complainants against estate of Cobb. The actual *money value* paid in said purchase, by said claims, *is not stated*. Admit their power thus to *purchase* said bills, and still to ask subrogation as *surety*, they can only be reimbursed the actual amount paid. " A *surety* cannot speculate on his *principal*." 5 Rawle, 106–110.

VI. No lien ever existed in favor *of the administrator*. It is only a " *valid*" sale which creates the lien. If the sale was invalid, no *title* passed to the purchaser. *The land yet belongs to the heirs.*

" An illegal disposition of property by an administrator is *no* disposition at all." \* \* \* " If the party purchased, *by a valid sale*, the law creates the mortgage for the purchase-money." 1 S. & M. 219–20 of case; 2 ib. 687. " The land was sold in *pursuance* of an order of court, and the sale returned to the court. On *this state* of facts the *lien* created by law *attached*." \* \* \* " Complainant shows that the land was sold *in such a manner* as to *create the* lien." 5 S. &. M. 107–8 of case. " The record required is that which *authorizes* the administrator to make a *valid sale*. The record which *authorizes* and *completes* the sale, \* \* and *creates a lien* for the purchase-money." 24 Miss. 645–6 of case.

The *strictness* required, under the decisions in this State, to divest the *title of heirs*, by proceedings in the Probate Court, need not be noticed. 37 Miss. 17.

1. No bond was given by the administrator upon obtaining the order of sale, as required by law. Pamphlet Acts, 1858, p. 187. The failure to execute such a bond renders the proceedings void. 26 Miss. 646; 34 Miss. 179, 304.

2. The law requires that " the purchaser shall execute *bond* with *security* for the purchase-money." Code, p. 446, art. 90. No other form or character of security can be taken. If accepted, it avoids the sale. 1 S. & M. Ch. 172; 1 S. & M. 236, case. To recognize the right of the Probate Court, or of the administrators to substitute their *discretion* in place of this *positive* law, would be disastrous to that whole policy which seeks to protect heirs against the negligence or misconduct of courts and trustees.

3. But, if a *bill of exchange* is equivalent to a *bond*, and an *accommodation* acceptor the *security* required by the act, surely that bill should be *payable* and that *acceptor reside in the State of Mississippi*. To substitute a *bill* payable in a *foreign* State, and an *acceptor* residing in a *foreign* State, for the *bond* and *security* contemplated by the statute, would seem to be in utter violation of the letter, object, and spirit of that enactment.

That such was the character of the bill of exchange executed upon the sale of the land, is apparent on the face of the complaint.

4. There was not such service of process or publication, in reference to the minor heirs, as authorized the appointment of a guardian *ad litem*. There was no order for the appointment of such guardian.

VII. The *alternative* prayer of the bill cannot be made by the complainants. It asks that the lien of the administrator may be enforced in *their* behalf; or, if the sale was *invalid*, and the title ·to the land still in the heirs of Cobb, that they may be subrogated to the rights of said heirs. If the sale was *invalid*, neither the *administrator* nor the *heirs* could obtain *such a decree for sale of the land*, as is sought by the bill. If the sale was invalid, a bill may be filed by *heirs* to remove the deed to

Lockhart, as a cloud on their title, or bring ejectment for the land; but there would be no mutuality in permitting them to proceed as contemplated by the bill; nor will the law make new legal contracts out of old and invalid agreements, and then enforce them, as if such had been their original form and character. 1 S. & M. 221.

This court has decided that an *administrator* may file a bill asking the enforcement of the lien upon *personal* property, if the sale *was valid;* or, *if not,* for a delivery of the specific property. This may well be, because if the sale was invalid, the *right* and *title* to the property was in the administrator. 1 S. & M. 221, 220. But this is not the position of the complainants.

It was argued in the court below that, as the bill charged *fraud,* a demurrer would not lie; that an answer must be filed. The case of *Niles* v. *Anderson* (5 How. 365) was relied on. The principle sought to be invoked is not applicable to this case. To a bill charging fraud, a *general* demurrer cannot be filed. "Demurrers are *general* when no particular cause is assigned, except the usual formulary that there is no equity in the bill. They are special, when particular defects are pointed out." Story's Eq. Pl. § 455. The case cited was a "general" demurrer, and decision placed on that express ground.

"No answer denying the fraud can be filed at same time with demurrer to whole bill." 23 Miss. 304.

The allegation of fraud need not be answered, because no relief could be granted, even if admitted. 13 S. & M. 93.

ELLETT, J., delivered the opinion of the court.

The administrators of J. B. Cobb, under an order of the Probate Court of Lowndes county, sold a certain tract of land, which was purchased by the defendant Lockhart. The purchase-money was secured by bills of exchange, accepted by the appellants, as sureties for the purchaser, and they allege that they have paid the bills; and they bring this suit to be subrogated to the lien on the property, given by statute to the administrators, as a security for the purchase-money. The bill also

charges fraudulent conveyances to have been made of the property by Lockhart, in favor of his wife, and his father-in-law, Moody.

The bill was dismissed as to Lockhart, and his wife, and Moody, on their demurrer.

One of the numerous grounds of demurrer assigned, makes the point, that the order of sale was void, for the reason that the heirs of Cobb were not legally notified of the application by the administrators for that purpose. If this be true, then there could be no implied statutory lien for the purchase-money, and no right of the administrators to which the complainants can be subrogated.

The proceedings on the petition for the order of sale are set out in general terms, and a full copy of the record is referred to as an exhibit, and made part of the bill.

The petition for the order of sale alleges that Thomas W. Cobb, George Cobb, and Joseph Cobb, minor heirs of Joseph B. Cobb, reside with their mother in the county of Lowndes, in this State. On this petition, an order was made directing a citation to issue to the said Thomas W. Cobb, and other heirs named, and that publication be made as to Julia A. Redwood and her husband, who resided in Alabama. The citation was returned "executed on all but T. W. Cobb, he not found." On the return day of the citation, the court appointed a guardian *ad litem* for said Thomas W. Cobb, George and Joseph Cobb, but no answer was filed by said guardian for the infants. Proof of publication was made as to Redwood and wife, which was also addressed "to all other persons interested in said estate." The final decree recites that E. D. Cobb, widow, and George and Joseph Cobb, minor heirs, have been personally, and Redwood and wife and Thomas W. Cobb, who are absent from the State, have by due and legal publication and notice, been cited, &c.

It is clear, from the whole record, that Thomas W. Cobb, a minor heir, was a resident of the county of Lowndes, and that he had no notice of the proceeding to subject him to the jurisdiction of the court. The order of sale was therefore void as

to him, and being void as to him, it was void as to all the parties.

The sale was also void because the court did not require the bond prescribed by the act of Nov. 30, 1858. Pamphlet, 187. See the following decisions upon a kindred statute : *Currie* v. *Stewart*, 26 Miss. 646; *Cohea* v. *The State*, 34 Miss. 179; *Washington* v. *McCaughan*, 34 Miss. 304.

It is objected, on the other hand, that the bill charges fraud in the conveyances by Lockhart to his wife and father-in-law, and that a demurrer cannot be sustained to a bill charging fraud.

The rule invoked is subject to this qualification. If the fraud is well charged, so as to make a case for equitable relief, the bill cannot be dismissed on a demurrer. But if the fraud charged is not of such a character, or has not been committed under such circumstances as to entitle the complainant to equitable relief in regard to it, then a demurrer is proper. In this case there is no sufficient ground for any relief against Lockhart, and therefore the averment of fraud in the conveyances made by him are immaterial, and furnish no foundation for relief against his vendees.

Let the decree be affirmed.