Statement of the case.

CHARLES Q. MOORE *v.* ALICE SUMMERVILLE ET AL.

1. PROCESS. *Publication. Chancery practice. Code* 1892, § 3421.

   Constructive service of process, by publication, is insufficient to support a decree unless the precedent proceedings strictly conform to the statute (code 1892, § 3421) authorizing such service.

2. SAME. *Partition. Tenants in common. Affidavit of nonresidence.*

   A decree for the sale of lands for division of the proceeds among tenants in common is void if rendered upon proof of publication only without the precedent affidavit required by statute to authorize such service of process.

3. PARTITION. *Decree for sale. Vacating. Code* 1892, § 3118.

   Where a sale of lands for division of the proceeds was made at the suit of a complainant who asserted an acquisition by him of the interest of one of several tenants in common (not made a party) by virtue of an execution sale, and the proceeding was void as to another of the tenants in common, named as a defendant, for want of notice to her, said defendant may set aside the decree not only as to herself, but as to all the parties, and may thereafter defend the partition suit by showing that the complainant had never acquired any interest in the lands, because the judgment and execution under which he purchased were void.

4. SAME.

   In such case the tenant whose interest was claimed by the complainant is a proper party to the proceeding to vacate the decree and sale thereunder.

FROM the chancery court of, first district, Panola county.

HON. JAMES C. LONGSTREET, Chancellor.

In 1896, one Cannon died intestate, seized and possessed of the lands in controversy in this suit, leaving as his heirs his wife and children; Alice Summerville being one of the children. Appellant, Moore, purchased at execution sale the interest of one of the heirs, and in January, 1898, filed his bill in the chancery court of Panola county against the other heirs, seeking to

have the land sold for partition.   Process was served on all the defendants except Alice Summerville, who was a non-resident. At the February term, 1898, there was an order of court entered as follows: "It appearing to the court by an averment in the bill, filed and sworn to, that Alice Summerville, a defendant therein, is a non-resident of the state, and that the post-office of said defendant is the city of Chicago, state of Illinois, and that she is a resident of said city, it is ordered and adjudged that publication be made."   Upon this order, publication was made, commanding her to appear on the second Monday of May, 1898.   At the August term, 1898, a *pro confesso* decree based on said publication was rendered against her.   At the February term, 1899, a final decree was rendered, ordering the sale of the land.   The land was accordingly sold, and purchased by appellant, Moore, of which report was made, and the sale confirmed.   In November, 1899, appellees filed their bill in this case against Moore, in the nature of a bill of review, seeking to have the proceedings under which Moore bought the land reviewed and set aside, with a prayer for a writ of injunction restraining Moore from interfering with the possession of complainants.   The injunction was granted.   Subsequently, at the instance of Moore, a writ of possession was issued on the decree in the partition suit confirming his purchase of the land, commanding the sheriff to put Moore in possession of the property.   Complainants then procured in their suit against Moore—the bill of review case—a writ of injunction restraining Moore and the sheriff from interfering with complainants' possession or rights in the lands.   On motion of defendant, Moore, at the February, 1900, term of the court, the injunction was partially dissolved, being only retained in so far as it prohibited Moore from disposing of the land, and the decree modifying the injunction awarded damages against the complainants in the sum of $50 for attorney's fees.   Complainants amended their bill, and defendant, Moore, demurred to the bill, as amended.   The demurrer being overruled, Moore

declined to plead further, and a decree was rendered setting aside the proceedings in the original cause, back to the original bill for partition, and complainants were authorized to answer that bill, which they did; and the original cause came on for hearing at the August, 1900, term of the court on that bill and answer, and proof taken. On the final hearing a decree was rendered setting aside Moore's title and dismissing his bill. From that decree he appealed to the supreme court, and complainants prosecuted a cross-appeal from the decree against them for damages.

*Boothe & Boothe* and *Miller & Miller,* for appellant.

We take up the alleged errors in the face of the record in the order in which they are presented in the bill of review, and answer the same, we think, conclusively.

It is alleged that the order for the publication for the defendant, Alice Summerville, was made without any legal showing that she was a non-resident, and that notice to her was void. We reply that this is not an error apparent upon the face of the record. It does not show that a proper showing was not made to the court of non-residence, etc., upon which publication was ordered. The order for publication was by the court, and is presumed to be correct and to have been predicated upon legal and satisfactory evidence to the courts of the facts necessary to warrant the order. Every presumption will be indulged in favor of the correctness and validity of this order of the court, as of any other judgment or decree until its invalidity or facts which vitiated it permanently appear. *Westbrook* v. *Thompson,* 58 S. W. (Tenn.), 223. Code of 1892, § 3421, simply directs what shall be sufficient evidence to warrant the clerk, a ministerial officer, in vacation, to make publication when the bill or petition is filed, and was never designed to preclude the court from ordering, in term time, publication upon other and different evidence infinitely more satisfactory to the court, perhaps, than a bill sworn to or an affidavit. When

in the progress of the cause, the fact develops that a party defendant is a non-resident and ought to have notice by publication, and who may have been through ignorance or mistake, alleged in the bill to be a resident (as was the fact in Moore's bill), then the court may order publication without the filing of a formal, written affidavit, and upon oral proof infinitely more satisfactory to the court of the facts upon which to predicate the order of publication than an affidavit or sworn bill would afford. The court in term time, we think, would of its own volition, order publication of notice to a non-resident appearing to be a proper party. Notice under the statute was filed that oral proof would be taken in open court, and it will be presumed in favor of the order of the court that proper and satisfactory proof was made of the non-residence of Alice Summerville. *Essig* v. *Lower,* 120 Ind., 239.

It may be claimed by counsel for appellees that in the order of the court directing publication of notice to Alice Summerville, because of the recital therein, that it appeared from the allegations of the bill that she was a non-resident, etc., when it was so alleged, that therefore the order is invalid. To this we reply that such recital constituted no part of the order; it was unnecessary and mere surplusage.

"We do not understand that the reasons given for a finding are judgments. The point decided is the thing fixed by the judgment, but the reasons are not." *Burke* v. *T. M. W. Co.,* and *LaFarge,* 12 Cal., 408; Powell on Appellate Proceedings, sec. 29, p. 54; *Shepherd* v. *Nabors,* 6 Ala., 631; Freeman on Judgments (3d ed.), § 2; *Ib.* § 249; *Davidson* v. *Carroll,* 23 La. Ann., 108; *Bryant* v. *Rosenbaum,* 62 Miss., 191.

However this may be, and if it should be held that the notice by publication to Alice Summerville was void, then this only affected her interest, and she alone could be heard to complain. The other defendants all had their day in court, were duly served with notice and were, therefore, concluded by the decree of sale and the decree confirming same, and Moore, the pur-

chaser, became the owner of all the interests or shares, except that of Alice Summerville, who still held her interest unaffected by the sale, as tenant in common with Moore, who under his purchase owned all the other interests, and in this view of the case the sale should not have been set aside except as to her interest. *Moody* v. *McDuff,* 58 Miss., 751; *Allen* v. *Martin,* 61 Miss., 78; *Henderson* v. *Wallace,* 72 N. C., 451; *Williams* v. *Westcott,* 14 Am. St. Reps., 287 (77 Iowa, 332); *Nevelle* v. *Kenney,* 125 Ala., 149.

"The rule that a judgment is an entire thing and if reversed as to one must be reversed as to all is only applicable to judgments at law." 1 Black on Judgments, sec. 211; 2 Black on Judgments, secs. 660-661; *Vorhis* v. *Gamble,* 6 Mo. Ann., 1; *Dickerson* v. *Chrisman,* 28 Mo., 134; *Pentz* v. *Kuester,* 41 Mo., 450.

It is claimed that William Cannon, who was one of the children, was not made a party, and his interest was not shown. To this we answer that the bill did sufficiently aver that William Cannon's interest had been sold under execution when complainant, Moore, became the purchaser, and the fact, therefore, clearly appears that William Cannon had no interest in the land and was not a proper party.

The averments in Moore's bill for sale for division were full and complete. *Martin* v. *Martin,* 95 Va., 26; *Smith* v. *Quares,* 46 S. W., 1035; *Ransom* v. *High,* 37 W. Va., 838; *Garrett* v. *Weinburg,* 50 S. C., 310; *Keil* v. *West,* 21 Fla., 508.

*L. F. Rainwater* and *P. H. Lowrey,* for appellees.

A proceeding for the sale of lands for division is a purely statutory one and must be strictly pursued. Everything necessary to give the court jurisdiction of all the parties must affirmatively appear of record. *Cox* v. *Kyle,* 75 Miss., 669.

In order to give the court jurisdiction of a non-resident defendant the preliminary steps to publication must be strictly followed.

Before any order of publication can be legally made it must be positively and clearly shown, either by the bill or petition, sworn to, or by separate affidavit, that the defendant is a non-resident of this state, or not to be found therein upon diligent inquiry; and the postoffice must be stated or shown not to be within the knowledge of affiant.     Code of 1892, § 3421; *Winston* v. *McLendon,* 43 Miss., 254; *Burks* v. *Burks,* 66 Miss., 494; *Dickey* v. *Chicago,* 152 Ill., 38.   This affidavit is a neces-sary precedent step before any legal publication can be made, and a failure to make such affidavit renders the service by pub-lication absolutely void.

Upon a careful investigation of the decisions of our own courts, it appears to be the settled law in this state that a judg-ment or decree void as to one or more of the defendants is void as to all.   Especially is this true in proceedings for parti-tion or for sale of land for division, which, being an innova-tion, must be strictly pursued.   *Hamilton* v. *Lockhart,* 41 Miss., 460; *Martin* v. *Williams,* 42 Miss., 210; *Weis* v. *Aaron,* 75 Miss., 138; Freeman on Judgments, 1 Ed., sec. 136.

CALHOON, J., delivered the opinion of the court:

The decree for partition was clearly void as to Alice Sum-merville, because of the defective publication of notice to her as a non-resident.   The bill of Mr. Moore avers that she and the numerous other defendants are residents of Panola county.   No affidavit is made that she was a non-resident.   After return of not found as to her, an order of publication was made; but the order recites merely that "it appearing to the court by an averment in the bill, filed and sworn to, that Alice Summer-ville, a defendant therein, is a non-resident of this state, and that the postoffice of said defendant is the city of Chicago, state of Illinois, and that she is a resident of that city, it is ordered and adjudged that publication be made," etc.   There is no such averment in the bill as the order recites.   In order to make constructive service of process by publication a sustain-

ing base for a decree, the proceedings precedent to the order must strictly conform to § 3421 of the code. Here there is no such basis. There was no affidavit or sworn bill that the defendant was a non-resident, or had her postoffice at Chicago, Ill. In fact, she did not live there at all, but in Nebraska, and never heard of the suit until after the final decree of partition. The partition was therefore void as to her, and, being void as to her, was, under the facts in this case, void as to the other heirs defendant. This is enough, and we need not notice the other questions presented by the appeal. The chancellor is sustained, also, on the cross-appeal. He properly allowed the $50 damages on the partial dissolution of the injunction.

*Affirmed on appeal and cross-appeal.*

*Boothe & Boothe* and *Miller & Miller,* for appellant, after the delivery of the foregoing opinion, filed a lengthy suggestion of error, making the following points:

The affidavit required by § 3421 of the code is not essential to confer jurisdiction. It is only necessary to enable the clerk to make legal publication in vacation, but, when the order of publication is made by the court, the presumption is that the order was made on sufficient showing, no matter what reason may be assigned in the order. The authorities cited in our brief sustain this view, and we call the court's attention particularly to *Cason* v. *Cason,* 31 Miss., 578. We quote from the opinion of the court: "There was no affidavit or sworn bill that the defendant was a non-resident, or had her postoffice at Chicago, Illinois. In fact, she did not live there at all, but in Nebraska, and never heard of the suit until after final decree of partition. The partition was therefore void as to her, and, being void as to her, was, under the facts in the case, void as to the other heirs, defendants." It is true there was no affidavit or sworn bill that the defendant was a non-resident, and had her postoffice at Chicago; but the fact is, such was her residence and postoffice address, and application was made, on the order

of the court, setting forth the fact, and a copy of the notice was duly mailed to her. This is not controverted, but is admitted. In any case, whether the publication, as to Alice Summerville, may be held good or bad, the fact that she never heard of the case until after the final decree is irrelevant. We insist that under the rule laid down in *Cason* v. *Cason,* 31 Miss., 591, which has never been questioned or overruled, the publication made by order of the court for Alice Summerville was good, and the decree against her was valid and binding. But if it is deemed wisest by the court to overrule that case, and hold that the affidavit is a jurisdictional fact, without which there can be no valid order and publication of notice to a non-resident in any proceeding whatever, then we insist that it does not follow that, because the sale for division was void as to Alice Summerville, it is void as to the other defendants. The case relied on by counsel for appellees does not support this view. The case of *Cox* v. *Kyle,* 75 Miss., 669 (23 So., 518), is correctly decided, but it does not affect the question raised here. *Winston* v. *McLendon,* 43 Miss., 254, was an insolvent proceeding in probate court for sale of land to pay debts, and service according to law was necessary to give jurisdiction. That does not militate against the rule insisted on here. *Burks* v. *Burks,* 66 Miss., 494 (6 So., 244), only prescribes what the affidavit should contain. *Hamilton* v. *Lockhart,* 41 Miss., 460, decides that an administrator's sale of land by order of probate court is void if the parties in interest have no notice, and *Martin* v. *Williams,* 42 Miss., 210 (97 Am. Dec., 456), only affirms the rule in the probate court. *Weis* v. *Aaron,* 75 Miss., 138 (21 So., 763; 65 Am. St. Rep., 594), is not applicable, because that was a judgment at law, and was an entirety. The case of *Drysdale* v. *Canning Co.,* 67 Miss., 534 (7 So., 541), was an attachment proceeding, and the judgment was held void for want of notice. The case of *Hamilton* v. *Lockhart, supra,* is not authority for the·contention that a sale being void as to one party is void as to all, and, so far as it applies to this case, has

been overruled by *Rule* v. *Broach,* 58 Miss., 552, and *Moody* v. *McDuff, Id.,* 751, to which we call the attention of the court. Sale may be set aside as to some parties in interest, and confirmed as to others, and a decree for the sale of land for division is not, therefore, an entirety. *Allen* v. *Martin,* 61 Miss., 78; *Rule* v. *Broach, supra; Moody* v. *McDuff, supra; Henderson* v. *Wallace,* 72 N. C., 451; *Williams* v. *Westcott,* 77 Iowa, 332 (42 N. W., 314; 14 Am. St. Rep., 287); *Neville* v. *Kenney,* 125 Ala., 149 (28 So., 452; 82 Am. St. Rep., 230); *Lyons* v. *Hamner,* 84 Ala., 197 (4 So., 26; 5 Am. St. Rep., 363). The bill filed by Moore was not for partition, but for sale for division. No partition was asked for, and the decree was for sale, and the parties in court are concluded by the sale and confirmation. Evidently a different rule would govern in strictly partition suits, where land is partitioned in kind. · In that event no part of the decree could stand unless all parties in interest were in court. No such rule prevails where there has been a sale, and there is no reason for such rule. If the purchaser is satisfied, no one else can complain.

We earnestly insist that the court was misled in holding that, because the partition was void as to Alice Summerville, it was void as to the other heirs, by authorities cited by counsel for appellees, viz.: 17 Am. & Eng. Enc. Law (1st ed.), 810, where it stated that "a decree for partition is a unit, and, if bad in part, is bad in whole," and to sustain which the case of *Corwithe* v. *Griffing,* 21 Barb., 9, is cited in note, which was in fact not a sale of land for division, but simply a division in kind, wholly different from the case at bar. Different rules apply in such cases, for obvious reasons. Our court has sufficiently adjudicated that a decree of sale is not a "unity" or entirety, and may be valid and binding as to some of the defendants, while it is not as to others. "The rule that a judgment is an entire thing, and, if reversed as to one, must be reversed as to all, is only applicable to judgments at law." *Voorhis* v. *Gamble,* 6 Mo. App., 1; *Dickerson* v. *Chrisman,* 28

Mo., 134. And which rule our supreme court clearly recognizes and adopts in *Moody* v. *McDuff, supra,* where the doctrine in *Hamilton* v. *Lockhart* is expressly repudiated on that point. It is immaterial to Alice Summerville whether she remains tenant in common with those who were her co-owners, or becomes tenant in common with the purchaser.

CALHOON, J., delivered the opinion of the court, in response to the suggestion of error.

Counsel have thanks for correcting the statement in the opinion that Alice Summerville did not live in Chicago, but in Nebraska. This was an error by inadvertence from confusing her with another party to this suit, and the opinion is changed to conform, though it is not perceived how it in any way affects conclusions. That she, because of defects in the constructive notice sought to be fixed on her by publication, may reopen the case and have a rehearing, is plain under code 1892, § 519, and this even if she knew of the proceedings. *Jacks* v. *Bridewell,* 51 Miss., 881. That the minors may reopen the case is hardly within the range of discussion. Code, § 596. Nothing in the code chapter on partition varies the rights of Alice Summerville or the minors. The technical name of the bill is immaterial. It is of no moment whether or not it is an independent bill, a bill of review, or a bill in the nature of a bill of review, or a supplemental bill, or a supplemental bill in the nature of a bill of review. We adhere to the ruling that in this case, the sale having been made, and the proceeds not distributed, the decree, being void as to some or any of the co-tenants, is void as to all. See authorities cited in brief of counsel for appellees and 17 Am. & Eng. Enc. Law (1st ed.), p. 811, note 1; Freem. Co-Ten., sec. 483; *Hull* v. *Cavanaugh,* 6 Mo. App., 147; *Holloway* v. *McIlhenny Co.,* 77 Tex., 659, 660 (14 S. W., 240); Succession of Poree, 27 La. Ann., 463.

It seems to us the only question to be dealt with in this record is whether the demurrer to the bill was good because

William Cannon was made a party. If he was a proper party, the controversy is ended. It is necessary here to give a history of the whole matter. The ground first broken in this litigation was the filing of a bill for partition by C. Q. Moore, the appellant here. He filed his bill January 16, 1898, against Harriet Cannon, the widow of G. B. Cannon, deceased, and the following named heirs of G. B. Cannon, namely: Alice Summerville, Jennie Canon, Jimmie Cannon, all adults, and Fannie Cannon, Ella Cannon, and Green Cannon, minors. It must be noted that he does not make William Cannon, who is also one of the heirs of G. B. Cannon, a party to his bill of complaint. His bill avers the death of G. B. Cannon in 1896, seized and possessed of the land in controversy, describing it, and that he is the owner of the undivided interest of said William Cannon in the land by purchasing the same at execution sale under writs of execution against said William Cannon, and that the land is incapable of division in kind, and that the interest of all parties would be best promoted by a sale for division. This is the whole bill of C. Q. Moore, substantially, and under it the prayer is that defendants may be made parties, and a decree of sale made, after setting aside the homestead exemption of the widow, of the remainder of the land, and for general relief. It must be noted in reference to this bill that Alice Summerville was never made a party by service of process or valid publication of notice. It must be further noted that there appears nowhere in that record any exhibit or evidence whatever showing the proceedings of any court terminating in any judgment under which Mr. Moore purchased; the only averment being, as aforesaid, that he was the owner of William Cannon's undivided interest in the land, "having purchased the same under execution." There appears in that record no deposition or recital of any oral statement by any witness in the cause. A *pro confesso* was taken against the adult defendants. Thereupon three freeholders were appointed to set apart the homestead, who duly made report, and then appears a notice

that the complainant desired to have witnesses examined in open court. The commissioner to set apart the homestead made report, which was confirmed, and the final decree, February 20, 1899, in that record, purports to have been rendered on the bill *pro confesso* against the adults and proofs, and recites that, it appearing to the court "on proofs submitted" that a just and equal division could not be made, and that a sale would better promote the interest of all the co-tenants, it provides for the sale of the land by a commissioner. The sale was made April 3, 1899, and C. Q. Moore was the purchaser for the sum of $600, and the commissioner duly reported the sale, which was confirmed August 21, 1899, and a distribution of the purchase money decreed to be made, with allowance to complainants' attorney of $60 and costs and expenses, amounting to $59.54 more, and providing that the shares of the minors should be paid to their mother, Harriet Cannon; and a writ of possession was ordered to put Mr. Moore into possession of the whole property, which was executed by the sheriff, January 17, 1900. An attack was made on this record by a bill filed on November 29, 1899—less than one year after final decree, and before Moore was put into possession—which bill and the proceedings under it are the matters now for consideration by this court. This bill was filed by Alice Summerville, William Cannon, and Jennie Cannon, adults, and the minors, Fannie Cannon, Ella Cannon, and Green Cannon, suing by their next friend, Jennie Cannon, and the defendants to this bill are C. Q. Moore and Jimmie Cannon. This bill charges the death of the ancestor, G. B. Cannon, his ownership of the land, and the title in his children by descent as tenants in common, and that on February 16, 1898, C. Q. Moore filed his bill, which is the bill hereinbefore abstracted. It further sets forth that a decree of sale in that cause was rendered, and that the land was sold under it on April 3, 1899, at which said Moore was the purchaser for $600, and the confirmation of that sale. The bill then undertakes to show that the whole proceeding was a nullity be-

cause not based on anything, by averring that C. Q. Moore had no claim of title whatever to the undivided interest of William Cannon, because, it avers, that it is predicated of the purchase by said Moore under execution issued in two causes by a justice of the peace, which judgments, it is charged, were void, because as to one of them the judgment was rendered by a mayor of a town as to land in another district of the county, in which latter district there was a justice of the peace, and because there was no service of process, nor publication, nor posting of notice to make William Cannon a party to the proceeding. As to the other judgment, the averment is that it is void because no valid levy was made on the land, and because there was no actual or constructive notice to William Cannon, who was a non-resident of this state. It further charges that there never has been any enrollment of the judgment in the circuit clerk's office, and no entry on the *lis pendens* docket, and that no certified transcript was filed with the conveyance of the sheriff to said Moore. Of the complainants, William Cannon and Alice Summerville aver that they know nothing whatever of the proceedings by Moore to sell the land for partition, to which proceeding the said William Cannon was not a party. It states that the facts in the record show that this proceeding was a nullity as to Alice Summerville for want of proper publication of notice. The bill further shows that the common ancestor had made advancements to William Cannon intending them as a charge upon his interest in his estate, and says that he is not entitled to any share until those advancements, evidenced by four promissory notes, aggregating $510, should be paid, with interest, and that, in fact, the said William has no interest, having received more than his share; and, further, that said William recognized this, and on July 31, 1897, executed a trust deed covering his interest to secure Harriet Cannon, his mother, in this $510 and interest; and that this trust deed was filed for record August 4, 1897, and duly recorded; and that this was before the sale under the justice's judgment at

which said Moore bought; and that the trust deed was then still unsatisfied, and still remains so, although it is charged that an entry of satisfaction appears on the margin of the record of the trust deed, signed by the mother, Harriet, but without the knowledge or consent of complainants, and without any actual satisfaction. The bill then states that in January, 1899, said William Cannon attempted to convey his interest to Jimmie Cannon for the recited consideration of $510 and interest, the said Jimmie agreeing with William to pay his indebtedness to the other heirs, all of which was unknown to complainants, except William Cannon himself, and that this whole proceeding was void. The bill charges that the purchase by Moore at the partition sale was for $600—a grossly inadequate sum, the property being worth at least four times that amount—and it charges, on information and belief, that the decree of sale of land for partition was granted without proof that it was incapable of being partitioned in kind, and states that it could easily have been divided in kind so as to give each one of the heirs eighty acres, and it points out the fact that the decree was rendered without any appointment of a guardian *ad litem* for the minors, and avers that none of the parties except said C. Q. Moore was present at any part of the proceedings, nor at the sale, nor at the court, and that none of them have had any of the proceeds of the sale, but have been notified by the commissioner that he has for each the sum of $60 in full payment, and which they refused to receive. It is also charged that the writ of possession had issued to put Moore in possession, and the bill prays for injunction against disturbing the possession, and the prayer is that the proceedings for partition be reviewed, the decree of sale and of confirmation and of the proceedings thereunder be annulled, and for leave to complainants to answer the bill of C. Q. Moore for partition, and make defense to that, and for general relief.

Defendant, Moore, moved to dissolve the injunction because the bill showed no equity, and was not supported by oath or

evidence, and that Moore had been put into possession when the writ of injunction was issued and served on him. Upon this, the chancellor dissolved the injunction so far as it commanded the sheriff to restore possession, but retained it in so far as it restrained Moore from disposing of the property until further orders from the court. On February 14, 1900, an amended bill was filed by Alice Summerville, William Cannon, Harriet Cannon, Jennie Cannon, and Jimmie Cannon, adults, and Fannie Cannon, Ella Cannon, and Green Cannon, minors, by next friend, as complainants, against C. Q. Moore alone, as defendant; and this last bill shows, first, the full record of all the proceedings in the suit for partition filed by C. Q. Moore, which is hereinbefore fully abstracted, and it then refers to the original bill by all the complainants except Harriet Cannon and Jimmie Cannon, and that that bill has not been answered, and that Harriet Cannon and Jimmie Cannon, defendants with C. Q. Moore to that bill, desire to join with complainants in the bill to which this is an amendment, as a supplement and amendment, which is done "by leave of the chancellor given in vacation." The complainants then represent that the whole proceedings in the cause for sale for partition of the land are erroneous, and ought to be reviewed, reversed, and set aside, because they say that the order for publication for Alice Summerville is void; and that William Cannon's interest is not set out or stated, and that he was not made a party to the bill; and no showing is made of the justice's proceedings under which Moore purchased, and that no valid title passed to him, and that he had never received any conveyance of the land; and that no showing is made of the interest of any of the parties in the land; and that the order for setting apart the homestead of the widow was void. They then denominate this bill as their bill of review, but they reaffirm and reiterate "the allegations in the original bill herein filed, and make this a part thereof." They then pray that all the decrees in the original proceedings be "reviewed, reversed, and set aside," and for

leave to them to answer the original bill of Moore, and make all their defenses to the same; and they tender with this bill the answer which they propose to file upon leave given; and they pray that, pending their defense, they be restored to possession of the land, and for general relief. To this bill, so amended, C. Q. Moore demurred on the grounds that William Cannon was an improper party, the bill showing that he had no interest, and that the bill does not show errors or sufficient grounds for the relief prayed for, and that the bill shows that the proceedings were valid, and the sale legal, and that the publication for Alice Summerville was legal, and that the bill shows that complainants are concluded by the proceedings they seek to review. This demurrer the chancellor overruled; and C. Q. Moore declined to plead or answer further; and the court decreed that the proceedings are reviewed, and the order and decrees are reversed and set aside, and the defendants in that proceeding for partition are given leave to answer the bill therein (which answer is tendered with the bill of review, in which William Cannon is given leave to join), and that Moore restore the possession of the premises to the complainants, and that the commissioner refund to Moore the purchase money paid on the partition sale. The answer of complainants to the bill of Moore for partition then appears, setting up practically what their bills set up, and then it appears that C. Q. Moore came by his solicitors, and moved the court to strike out of the answer the names of all parties in it except that of Alice Summerville, because all except her are precluded by the former decree of the court, and have no interest therein; which motion the chancellor overruled, and rendered a final decree dismissing Moore's bill at his costs. To Moore's bill, Alice was not a party by notice actual or constructive. At the sale under it, the land purchased by Moore was not "purchased by any of the tenants in common" because his decree was a nullity, and Alice could reopen for all. Code 1892, § 3118. See, also, authorities in brief of counsel for appellees, and those cited here-

inbefore.  The first part of code, § 3118, refers to cases where there was no notice in fact, though there might have been proper publication, as in attachment cases.  No statute of ours avoids the rule, "Void as to any, void as to all," in a case like this.  At a valid sale, the price bid might have been an approximation of the real value.  Moore's decree was a nullity because of the undenied averment that William had no notice of the proceedings before the justice of the peace.  William was a proper party to the proceeding to review.  Though not a party to Moore's bill, he was interested in its results.  Moore predicated his right to a sale for partition on the asserted fact that he was co-tenant with the other heirs by reason of a purchase of William's interest at execution sale.  He got a decree of sale for partition, and bought the whole tract, including William's interest.  But William says there was no notice to him, either actual or constructive, of the proceedings which ripened into judgments against him, under executions on which Moore bought.  Surely, he might have filed for himself an independent bill to vacate, and, therefore, might join those claiming under him in a bill of review.  A bill by the other heirs to do so would require that he be a party.  A stranger to a decree whose interests are affected by it, or who is in privity with the parties to it, may file a bill of review.  2 Am. & Eng. Enc. Law (1st ed.), pp. 263, 264; 17 Am. & Eng. Enc. Law (1st ed.), p. 717; Story Eq. Pl., sec. 424; *Id.,* 338; Freem. Co-Ten., sec. 463; *Shields* v. *Barrow,* 17 How., 130 (15 L. Ed., 158).  If all the heirs but William, or any of them, had filed the bill, he was a proper party to prevent him from again litigating about the land or his alleged conveyance of his undivided interest, and to show that Moore's proceedings had no foundation to rest on.  Without him, complete justice between all the parties to this litigation could not be had, and other litigation would be inevitable.  *Patty* v. *Williams,* 71 Miss., 837 (15 So., 43).

*Suggestion of error denied.*